932 F.2d 170
 Graeme MacArthur LACEY, Appellant,
v.
CESSNA AIRCRAFT COMPANY, a corporation; Hanlon & Wilson
Company, a corporation; Teledyne, Inc., a
corporation; and John Does 1-10.
 No. 90-3324.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 26, 1990.
Decided April 23, 1991.
Rehearing Denied May 28, 1991.
 
 Herbert E. Adelman (argued), Arlington, Va., Michael Louik, Berger, Kapetan, Malakoff & Meyers, Pittsburgh, Pa., for appellant.
 Eric N. Anderson (argued), Meyer, Darragh, Buckler, Bebenek, Eck & Hall, Pittsburgh, Pa., for appellee Cessna Aircraft Co.
 Robert L. Potter (argued), Strassburger, McKenna, Gutnick & Potter, Pittsburgh, Pa., for appellee Hanlon & Wilson Co.
 Eric P. Reif (argued), Amy Acheson, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellee Teledyne, Inc.
 Before BECKER and NYGAARD, Circuit Judges, and POLLAK, District Judge.*
 OPINION OF THE COURT
 BECKER, Circuit Judge.
 
 
 1
 This appeal requires us to revisit the doctrine of forum non conveniens and to explore again the impact of Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), on that doctrine. The setting is the marathon struggle of Graeme MacArthur Lacey, an Australian citizen who suffered severe burns as a result of a plane crash in British Columbia, to litigate his products liability action in the Western District of Pennsylvania. Lacey's antagonists are Cessna Aircraft Company ("Cessna"), the manufacturer of the aircraft; Teledyne, Inc. ("Teledyne"), the manufacturer of the aircraft's engines; and Hanlon & Wilson Company ("Hanlon & Wilson"), the manufacturer of the aircraft's exhaust system. These defendants insist that Lacey's action cannot proceed fairly in the Western District of Pennsylvania, and that instead it should be litigated in British Columbia.
 
 
 2
 The district court, accepting defendants' arguments, dismissed Lacey's suit on forum non conveniens grounds. We reversed, holding, inter alia, that the defendants had not submitted sufficient evidence to facilitate proper forum non conveniens analysis, and that the district court had not adequately considered the relevant private and public interest factors outlined in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), and in Piper. Lacey v. Cessna Aircraft Co., 862 F.2d 38, 49 (3d Cir.1988). On remand, the district court again dismissed Lacey's suit, conditioning its dismissal on the fulfillment of several requirements, most notably on the defendants' agreement to "make available to plaintiff in British Columbia, for discovery and trial, all relevant witnesses and documents within defendants' control." Lacey v. Cessna Aircraft Co., 736 F.Supp. 662, 669 (W.D.Pa.1990). The district court, in response to our earlier reversal, accorded specific deference to Lacey's forum choice and analyzed seriatim the private and public interest factors. In so doing, the court concluded that the relevant factors preponderate strongly in favor of proceeding in British Columbia. This appeal followed.
 
 
 3
 Lacey challenges the court's second forum non conveniens dismissal on numerous grounds. Positing that there is a special obligation on defendants to proceed expeditiously with forum non conveniens motions, Lacey attacks as an abuse of discretion the court's decision to admit certain untimely materials, particularly Hanlon & Wilson's "statement of position." Absent this submission, Lacey claims, defendants' forum non conveniens motions would have failed as a matter of law. Additionally, Lacey insists that the district court's forum non conveniens analysis is flawed because the court failed: (1) to indicate with the requisite precision the amount of deference due plaintiff's forum choice; (2) to "entangle" itself sufficiently in the facts of the case; and (3) to analyze adequately and correctly the relevant private and public interest factors.
 
 
 4
 With respect to this latter point, Lacey places particular emphasis on the court's assessment of three factors, namely, relative ease of access to sources of proof, application of foreign law, and relative advantages and obstacles to a fair trial. He argues that the district court's treatment of these factors was in error because it incorrectly: (1) assumed that the evidence essential to plaintiff's products liability claim is in defendants' control; (2) concluded that plaintiff would be able to discover in British Columbia evidence in the possession of non-parties in the United States; (3) determined that British Columbia law would apply if this case were to proceed in the Western District of Pennsylvania; and (4) assigned dispositive weight to the possibility of joining all potentially culpable parties in British Columbia.
 
 
 5
 Many of Lacey's challenges fall well short of the mark. In particular, we think that the district court: (1) acted within its discretion in accepting Hanlon & Wilson's untimely submission; (2) accorded adequate weight to plaintiff's forum choice; and (3) immersed itself sufficiently in the facts of the case. Furthermore, we are mindful that the district court's forum non conveniens determination may be reversed only if there has been a clear abuse of discretion. If the district court has considered and balanced reasonably all of the relevant private and public interest factors, we must affirm. Piper, 454 U.S. at 257, 102 S.Ct. at 266-67. Despite our deferential standard of review, we believe, regretfully, that Lacey has identified a serious shortcoming in the district court's analysis that requires yet another remand.
 
 
 6
 At this stage of the litigation, the crux of Lacey's complaint is that a defect in the aircraft's exhaust system, which allegedly was manufactured by Hanlon & Wilson in Pennsylvania, caused the crash. That theory is supported by the final report of the Canadian Aviation Safety Board ("CASB"). In May of 1985, however, Hanlon & Wilson sold its aircraft exhaust system business to an Oklahoma corporation and transferred to that company all of the documents pertaining thereto. As a result, and contrary to the assumption on which the district court's order overtly depends, Hanlon & Wilson now represents that no documents relating to or personnel familiar with the company's prior aircraft exhaust business are under its control. Lacey therefore contends that the court's order requiring defendants to produce in British Columbia all relevant witnesses and documents in their custody is inadequate to ensure his access to sources of proof. We agree. Lacey also submits that this problem is exacerbated by his inability to discover in British Columbia, or, still more important, ultimately obtain, evidence within the control of non-parties in the United States. We think that this submission has force as well.
 
 
 7
 In dismissing Lacey's action, the district court did not consider the impediments that Lacey might face in gaining access to sources of proof in British Columbia, impediments that potentially rob British Columbia of its practical value as a forum. In view of this error, as well as other subsidiary points discussed below, we are unable to defer to the district court's conclusion "that the public and private interests both preponderate strongly in favor of dismissal." 736 F.Supp. at 669. Rather, we think that an order which dismisses a suit on forum non conveniens grounds without taking into account a critical limitation on the plaintiff's ability to prosecute his or her action in the alternative forum constitutes an abuse of discretion. We therefore will reverse the district court's dismissal of Lacey's suit and remand the case with instructions to determine whether Lacey would have access in British Columbia to witnesses and documents essential to his products liability action. If Lacey would not have access to essential evidence at trial in British Columbia, we believe that the court must deny defendants' motions to dismiss. In the course of our extended discussion, we will explain why this holding fully comports with the Supreme Court's decision in Piper.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 8
 Because the instant undertaking represents the fifth published opinion this case has spawned,[1] we will abbreviate our recitation of the facts. Lacey is an Australian citizen who, in 1985, was working temporarily in British Columbia for that province's forest service. Lacey boarded a Cessna 421A aircraft for a non-scheduled passenger flight from Invermere Airport to Kamloops, both of which are in British Columbia. Five people, in addition to Lacey, were on board--the pilot, Chris Pederson, and four other passengers, all of whom were residents of British Columbia. Almost immediately after takeoff, the aircraft's right engine lost power, and the plane crashed in a clearing not far from the runway. Lacey, the other passengers, and the pilot were able to exit the aircraft, but they sustained serious burn injuries. Lacey was treated for three months at Foothills Hospital in Calgary, and then transferred to a hospital in Melbourne, Australia. After the crash, certain parts of the aircraft were sent to the CASB for examination. The CASB's final report attributed the crash to the plane's exhaust system, stating that "[t]he right engine lost power when metal pieces from the deteriorating internal sliding sleeves in the exhaust stack entered the turbocharger and prevented the turbine from turning."
 
 
 9
 The Cessna 421A in which Lacey was a passenger was manufactured by Cessna, a Kansas corporation with its principal place of business in Kansas. The aircraft's engines were manufactured by Teledyne, a Delaware corporation with its principal place of business in California, and the aircraft's exhaust system was manufactured by Hanlon & Wilson, a Pennsylvania corporation with its principal place of business in Pennsylvania. The actions of the following non-party British Columbia corporations were also implicated by the crash: Sunrise Aviation Ltd., which operated the aircraft; Shaffer Aero Ltd., which maintained the aircraft; and Warner Aviation Ltd. or Capital Glass Ltd., which owned or leased the aircraft.
 
 
 10
 On July 17, 1987, Lacey instituted the instant diversity action in the district court for the Western District of Pennsylvania seeking compensatory and punitive damages. Two months later, defendants Cessna, Hanlon & Wilson, and Teledyne moved separately to dismiss Lacey's suit on forum non conveniens grounds. Claiming that the crash was caused either in whole or in part by pilot error or by negligent maintenance, and noting that both the pilot and the corporations responsible for maintaining the aircraft are citizens of British Columbia and not subject to the district court's personal jurisdiction, the defendants asserted that this case cannot proceed fairly in the Western District of Pennsylvania.
 
 
 11
 On November 9, 1987, the district court granted defendants' motions, concluding that the forum non conveniens issue is "resolved quite simply by reference to Piper." 674 F.Supp. at 11. The court condensed its entire analysis into the following three paragraphs:
 
 
 12
 The case at bar closely mirrors Reyno, and all the factors suggest a more appropriate forum is British Columbia, Canada. None of the potential witnesses, on either liability or damages, are located here. All are clearly beyond the reach of compulsory process. Even those persons plaintiff identifies as witnesses on the issue of product defect are located in such places as Witchita [sic], Kansas, Oklahoma City, Oklahoma, and Burbank, California, all inconvenienced by this forum as much as by British Columbia. The plane itself and all other physical evidence is located in Canada. Plaintiff's physicians and all medical records and damages evidence are located in either Canada or Australia. Such pertinent information as plane maintenance reports, weather information, and crash investigations is located in Canada.
 
 
 13
 In short, Pennsylvania's only connection with the litigation is the fact that defendant Hanlon & Wilson is a Pennsylvania corporation. Consequently, Pennsylvania has at best a negligible interest in this matter, in contrast to that of British Columbia. In stark counterpoint to this forum's lack of interest in the matter is the burden imposed. The length and complexity of the case would appear to be considerable, and the choice of law principles may require us to divine and apply Canadian or Australian law.
 
 
 14
 This forum having only a tangential interest in the subject matter of the case at hand, and this forum imposing serious inconvenience on the witnesses and parties alike, the action will be dismissed on the basis of forum non conveniens. An alternative forum, convenient to more of the witnesses and the situs of important physical evidence, is British Columbia, Canada.
 
 
 15
 Id.
 
 
 16
 Although the legal profession generally extols conciseness as a virtue, in this particular instance, we held that the court's brevity was a vice:
 
 
 17
 [A] district court abuses its discretion when it summarily grants or denies a motion to dismiss on forum non conveniens grounds. Rather, the district court is required to develop adequate facts to support its decision and to articulate specific reasons for its conclusion.
 
 
 18
 862 F.2d at 39. Concluding that the district court had not fulfilled this responsibility, we remanded for further consideration. Lacey's suit thereafter lay dormant for almost four months, until the district court ordered the defendants to submit supplemental briefs and supporting evidentiary material. Cessna and Teledyne filed their material before the court's March 31st deadline, but Hanlon & Wilson did not, prompting Lacey to object "loudly." Although the district court "share[d] plaintiff's distaste for defendant's delay," 717 F.Supp. at 365-66, it allowed Hanlon & Wilson to state its position with respect to Cessna's and Teledyne's forum non conveniens arguments by filing its own papers, which Hanlon & Wilson ultimately did on August 25th.
 
 
 19
 Upon review of the affidavits and supplemental briefs submitted by the parties on remand, the court again dismissed Lacey's complaint. Heeding our instructions, the court acknowledged that although Lacey is a foreign citizen, his forum choice is entitled to "at least some weight." The district court accordingly stated that it would "not lightly disturb plaintiff's choice of forum" and that it would "hold defendants to establishing a strong preponderance in favor of dismissal." 736 F.Supp. at 664.
 
 
 20
 The district court then analyzed each of the relevant private and public interest factors. It determined that certain factors favor dismissal (relative ease of access to sources of proof, relative advantages and obstacles to a fair trial, imposition of jury duty on people of an unrelated forum, local interest in local controversies, application of foreign law, and the ability of a forum to deal with the litigation as a whole); that other factors are neutral; and that no factors favor keeping the case in Pennsylvania. Overall, the court concluded that "the public and private interests both preponderate strongly in favor of dismissal." Id. at 669. This dismissal, however, was "conditioned on several items designed to protect plaintiff and to ameliorate to the extent possible any inconvenience imposed on plaintiff by discovery and trial in British Columbia." Id.[2]
 
 
 21
 Lacey advances several contentions on appeal. He argues, first, that the district court abused its discretion in allowing Hanlon & Wilson to submit out of time its "statement of position." He asserts, second, that the court failed adequately to assess the deference due his forum choice. Finally, Lacey contends that the district court's examination of the various relevant factors involved both abuses of discretion and errors of law. We will examine each of these arguments in turn.
 
 
 22
 II. DISTRICT COURT'S ADMISSION OF UNTIMELY MATERIAL
 
 
 23
 Throughout his brief, Lacey takes the defendants to task for failing to prosecute vigorously their motions to dismiss after the case was remanded to the district court. Lacey also criticizes the district court for not strictly enforcing its own deadlines. The legal anchor for these claims is Lacey's theory, grounded in certain language in In re Air Crash Near New Orleans, La. on July 9, 1982, 821 F.2d 1147 (5th Cir.1987), vacated on other grounds sub nom. Pan American Airways, Inc. v. Lopez, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989), that defendants have a special obligation to proceed expeditiously with forum non conveniens motions. Lacey points out that the defendants waited almost four full months following our remand before taking any action and that they acted at that time only because of the district court's prodding. Lacey protests, further, that even after the district court set a deadline for the parties' submissions, Hanlon & Wilson still did not timely file any material. More importantly, Lacey notes that the district court allowed Hanlon & Wilson to file papers almost five months after the deadline.
 
 
 24
 A few of Lacey's challenges can be dispatched without much discussion. To begin with, the four-month delay between our remand and the district court's order setting a briefing schedule was not excessive. Given the substantial caseload with which the district court has been saddled and the priority accorded criminal trials, it is not remarkable that the matter remained idle for almost four months. Nor do we think that defendants were obliged to prod the court on remand. Lacey was, of course, free to approach the district court immediately following our order and ask it to set a prompt briefing schedule. Furthermore, Lacey has not identified any prejudice stemming from the delay, and absent such a showing, we prefer to allow the district court substantial discretion in managing its own docket.[3]
 
 
 25
 The main target of Lacey's timeliness contention is Hanlon & Wilson's conduct, which he characterizes as "dilatory in the extreme." Lacey argues that the district court improperly permitted Hanlon & Wilson to state its position almost five months after the court's cutoff date for such submissions had passed. If the district court had not accepted Hanlon & Wilson's submission, Lacey contends, defendants' forum non conveniens motions would have failed as a matter of law. To be a suitable alternative forum, the foreign jurisdiction must have jurisdiction over all defendants. See infra at 180. Lacey claims that Hanlon & Wilson did not consent to British Columbia's jurisdiction until it filed its "statement of position." Hence, Lacey asserts, without Hanlon & Wilson's untimely submission, British Columbia would not have been an adequate alternative as to all defendants.
 
 
 26
 Lacey's timeliness argument is derived primarily from In re Air Crash. In that case, the Fifth Circuit stated:
 
 
 27
 [A] defendant must assert a motion to dismiss for forum non conveniens within a reasonable time after the facts or circumstances which serve as the basis for the motion have developed and become known or reasonably knowable to the defendant. While untimeliness will not effect a waiver, it should weigh heavily against the granting of the motion because a defendant's dilatoriness promotes and allows the very incurrence of costs and inconvenience the doctrine is meant to relieve.
 
 
 28
 821 F.2d at 1165 (citations omitted). Since the information contained in Hanlon & Wilson's "statement of position" was "reasonably knowable" to that defendant long before the court's March 31st deadline, Lacey asserts that consideration of Hanlon & Wilson's submission was precluded by In re Air Crash.
 
 
 29
 Contrary to Lacey's assertions, the Fifth Circuit's main concern in In re Air Crash was the timeliness of the defendant's motion itself, not the timeliness of supporting papers. See 15 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure Sec. 3828, at 291 (2d ed. 1986) ("[I]f the litigation has progressed significantly in the federal court a defendant's belated assertion that that forum is not a convenient one is likely to be dimly viewed by the court."), cited in In re Air Crash, 821 F.2d at 1165. In requiring defendants to make their motions in a timely manner, the In re Air Crash court sought to prevent eleventh-hour forum non conveniens motions. If a defendant raises a forum non conveniens objection " ' "for the first time after the defendant has answered, taken depositions, proceeded to pretrial and caused the plaintiff to incur expense in preparing for trial," ' " such delay should weigh against granting the motion. Creamer v. Creamer, 482 A.2d 346, 353 (D.C.1984) (citations omitted), cited in In re Air Crash, 821 F.2d at 1165.
 
 
 30
 In this case, however, the timeliness of Hanlon & Wilson's original forum non conveniens motion has never been at issue. In fact, Lacey was fully apprised of Hanlon & Wilson's position within three months of filing his complaint. When we reversed the district court's first dismissal, we stated that defendants had not submitted adequate information in support of their motions. The district court thereafter instructed the defendants to file "a Supplemental Brief and any evidentiary material in support of their Motion to dismiss." It was implicit in this order that defendants' earlier motions were still pending, and that the district court simply sought further supporting material as required by our reversal.
 
 
 31
 The issue then becomes whether the district court abused its discretion by allowing Hanlon & Wilson to submit untimely supporting material. Because Hanlon & Wilson was not on record as opposing or acquiescing in its co-defendants' post-remand forum non conveniens arguments,[4] the district court "require[d] [Hanlon & Wilson] to state its position ... either by filing its own motion and brief, or by joining in the other defendants' motions, or by filing a Response to those motions." 717 F.Supp. at 366. The decision whether to penalize non-compliance with a deadline is entrusted to the discretion of the court that imposed it. Here, the district court determined that justice would be better served by examining "the substance of the defendant's position," than by castigating Hanlon & Wilson for its delay. Id. at 366. It is not for us to micro-manage the district court's docket.[5] Because we see no reason to second-guess the court's judgment, we reject Lacey's contention that the court improperly considered Hanlon & Wilson's untimely material.
 
 
 32
 III. THE METHODOLOGY FOR RESOLVING FORUM NON CONVENIENS MOTIONS
 
 A. Scope of Review
 
 33
 Our scope of review of the district court's forum non conveniens determination is quite constrained. As the Supreme Court stated in Piper:
 
 
 34
 The forum non conveniens determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.
 
 
 35
 454 U.S. at 257, 102 S.Ct. at 266-67. In light of this admonition, we have held that "our review is limited to consideration of whether the district court abused its discretion, and we do not perform a de novo resolution of forum non conveniens issues." Lacey, 862 F.2d at 43. We have also held, however, that a district court abuses its discretion: (1) "when it fails to consider adequately and to determine the amount of deference due the foreign plaintiff's choice of forum," or (2) "when it clearly errs in weighing the factors to be considered." Lony v. E.I. Du Pont de Nemours & Co., 886 F.2d 628, 632 (3d Cir.1989).
 
 
 36
 B. Deference Due a Foreign Plaintiff's Forum Choice
 
 
 37
 In Piper, the Supreme Court remarked that although "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, ... that ... presumption applies with less force when the plaintiff or real parties in interest are foreign." 454 U.S. at 255, 102 S.Ct. at 265-66. Proceeding from this language, the district court, in its first dismissal, simply stated that Piper accorded "little weight" to a foreign plaintiff's forum choice. 674 F.Supp. at 11. On appeal, we held that this treatment was inadequate, noting that the district court had "not articulate[d] whether it accorded any deference to plaintiff's forum choice." 862 F.2d at 45 (emphasis in original). Concluding that Lacey's choice "should have been accorded at least some weight," we remanded the case to the district court with instructions to consider that neither British Columbia nor Pennsylvania is convenient to Lacey and to indicate how much deference it accords Lacey's choice. Id. at 46.
 
 
 38
 Before the district court reopened this case on remand, we decided another forum non conveniens case, Lony, in which we again commented on the deference due a foreign plaintiff's forum choice. Parsing the language of Piper, we stated that "the reason for giving a foreign plaintiff's choice less deference is not xenophobia, but merely a reluctance to assume that the choice is a convenient one." Lony, 886 F.2d at 634. We noted, however, that this reluctance "can readily be overcome by a strong showing of convenience." Id. Accordingly, we held that:
 
 
 39
 In ruling on a forum non conveniens motion, the district court must indicate the amount of deference it is giving to plaintiff's choice. Where a foreign plaintiff has made a strong showing of convenience, we hold that the district court must indicate how far that showing goes toward putting the foreign plaintiff on the same footing as a domestic plaintiff.
 
 
 40
 Id. (citation omitted).
 
 
 41
 With Piper, Lony, and our first Lacey opinion as authority, the district court proceeded to discuss the deference due Lacey's forum choice:
 
 
 42
 [W]e recognize that a certain presumption attaches to plaintiff's choice of forum, and that choice is not to be lightly disturbed. However, the degree of deference to be accorded plaintiff's choice of forum in this case is problematic. Because plaintiff is a foreign national with no connection to the forum, his choice is not entitled to the same degree of deference accorded a resident or citizen who chooses his own forum. On the other hand, the Court of Appeals in remanding this case has indicated that, because plaintiff is forced to choose between two inconvenient fora, his choice is due "at least some weight." Of course, this provides little direction and is impossible to quantify. But suffice it to say we will not lightly disturb plaintiff's choice of forum and will hold defendants to establishing a strong preponderance in favor of dismissal.
 
 
 43
 736 F.Supp. at 663-64 (citations omitted). Lacey argues that this analysis is inadequate because the court did not indicate the "amount of deference" it accorded his forum choice. We disagree.
 
 
 44
 Lony requires a district court to indicate the amount of deference it gives a foreign plaintiff's forum choice. Unlike Lacey, we do not read this language as requiring a court somehow to mark on a continuum the precise degree of deference it accords a plaintiff's choice. Indeed, the district court in this case expressly eschewed such an illusory exercise, stating frankly that it was "impossible to quantify" the applicable level of deference. 736 F.Supp. at 663. The court instead indicated the amount of deference it accorded Lacey's forum choice by expressly imposing on defendants a more stringent burden. Specifically, the court stated that defendants must establish "a strong preponderance in favor of dismissal." This treatment, we think, satisfies both our remand instructions and the requirements set forth in Lony. Although other formulas may be equally sound, the one used here demonstrates that the court accorded not insignificant weight to the plaintiff's forum choice and indicates roughly how much weight was accorded.[6]C. The Defendants' Burden
 
 
 45
 "It is settled that the defendant bears the burden of persuasion as to all elements of the forum non conveniens analysis." Lacey, 862 F.2d at 43-44. This burden comprises two basic elements. The defendant must establish, initially, that an adequate alternative forum exists as to all defendants. Id. at 44. If the defendant satisfies this burden, it must then show that the private and public interest factors weigh heavily in favor of dismissal. Id.
 
 
 46
 The requirement of an adequate alternative forum is generally satisfied "when the defendant is 'amenable to process' in the other jurisdiction." Piper, 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22 (citation omitted). Occasionally, however, if the alternative forum offers a clearly unsatisfactory remedy, it will nonetheless be inadequate. The latter situation arises, for instance, when the subject matter of the suit is not cognizable in the alternative forum. Id. at 254 n. 22, 102 S.Ct. at 265 n. 22.[7]
 
 
 47
 Once a defendant establishes that another forum is adequate (and available) to hear the case, the focus then shifts to the private and public interest factors catalogued in Gulf Oil and Piper. The private interest factors include:
 
 
 48
 relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make a trial of a case easy, expeditious and inexpensive.
 
 
 49
 Gulf Oil, 330 U.S. at 508, 67 S.Ct. at 843. The public interest factors include:
 
 
 50
 the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in application of foreign laws; and the unfairness of burdening citizens in an unrelated forum with jury duty.
 
 
 51
 Piper, 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6. To prevail on a forum non conveniens motion, the movant must show that the balance of these factors tips decidedly in favor of trial in the foreign forum. See In re Air Crash, 821 F.2d at 1164 ("[T]he moving defendant must ... establish that the private and public interests weigh heavily on the side of trial in the foreign forum."). If, when added together, the relevant private and public interest factors are in equipoise, or even if they lean only slightly toward dismissal, the motion to dismiss must be denied.
 
 
 52
 D. The Degree to Which the District Court Must "Entangle" Itself in the Facts of the Case
 
 
 53
 The linchpin of Lacey's argument before the district court was that this case is likely to be a products liability action centering on an alleged defect in the airplane's exhaust system. Because that exhaust system was purportedly manufactured by Hanlon & Wilson in Pennsylvania, and because all evidence relating to its design and manufacture is presumably located in the United States and hence amenable to discovery under the Federal Rules of Civil Procedure, Lacey argued that trial in his chosen forum "will best serve the convenience of the parties and the ends of justice," Koster v. American Lumbermens Mutual Casualty Co., 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947). On appeal, Lacey reiterates that the products liability aspect of this case will predominate. He suggests that the district court did not recognize this because it neglected to scrutinize closely the evidence before it.
 
 
 54
 Lacey relies on the CASB's final report to establish that product defect, not pilot error or negligent maintenance, will be the focus of this case. The CASB attributed the crash to the aircraft's exhaust system and exonerated the pilot and the maintenance firms. Several factors, Lacey submits, confirm the overarching importance of the CASB's report. He notes that our earlier opinion suggested that the court had short shrifted the CASB's findings. See, e.g., 862 F.2d at 44. Lacey maintains, further, that Piper is similarly instructive in this regard. See 454 U.S. at 239, 102 S.Ct. at 257 (mentioning a similar report by the British Department of Trade which suggested the possibility of pilot error, but found no evidence of product defect). Finally, Lacey emphasizes that Teledyne, in related litigation, expressly relied on the CASB's report when it stated that Hanlon & Wilson's "negligent design and/or manufacture of the exhaust system are believed to be a direct and proximate cause of the aircrash." In view of the foregoing, Lacey concludes, the district court accorded insufficient weight to the CASB's findings,[8] and thus failed to appreciate the true focus of this case. Lacey claims that this fundamental error tainted the court's entire analysis.
 
 
 55
 Faced with Lacey's emphasis on the products liability aspect of this case, the defendants rejoin in kind, arguing that the central issue instead will be pilot error and negligent maintenance. Defendants assert, first, that a competent pilot could have kept the Cessna 421A airborne, despite the failure of its right engine. Second, they contend that the firms responsible for maintaining the aircraft were negligent for failing to replace and to inspect regularly an exhaust system declared "obsolete" by Cessna in 1977. Defendants argue, third, that the CASB's findings are unsupported by the FAA's file concerning prior problems with the Cessna 421A's exhaust system. The defendants thus conclude that the "accident was caused by the negligence of a Canadian pilot and ... the negligence of Canadian corporations maintaining the aircraft," and urge that trial in British Columbia is therefore preferable.
 
 
 56
 In order to balance the relevant private and public interest factors, the district court must immerse itself to a certain degree in the facts of the case. We think, nonetheless, that Lacey has misapprehended the extent of the court's inquiry at this nascent stage of the litigation. The record here consists entirely of affidavits. No discovery has taken place; in fact, the defendants have not even answered Lacey's complaint. The district court, as a result, cannot now determine what the ultimate focus of the trial will be, yet the parties urge the court to do just that. We think, instead, that in resolving a forum non conveniens motion, the district court must do no more than delineate the likely contours of the case by ascertaining, among other things, the nature of the plaintiff's action, the existence of any potential defenses, and the essential sources of proof.
 
 
 57
 This description of the forum non conveniens inquiry comports with both Van Cauwenberghe v. Biard, 486 U.S. 517, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988), and Piper. In the former case, the Supreme Court considered whether the denial of a forum non conveniens motion is immediately appealable under the collateral order doctrine.[9] Recognizing that a "district court [addressing a forum non conveniens motion] generally becomes entangled in the merits of the underlying dispute," the Court held that denial of such a motion is not appealable. 108 S.Ct. at 1952. To bolster its conclusion, the Court noted that the examination of certain private and public interest factors requires the district court to determine what issues and proof will likely be advanced at trial. Id. at 1953. Nothing in the Court's opinion, however, directs a court to assess the relative strength of the parties' arguments and to select one paramount issue. Moreover, in Piper, there was significant evidence that the crash was due to pilot error, not mechanical failure. 454 U.S. at 239, 102 S.Ct. at 257. Yet, the Court did not factor that evidence into its forum non conveniens analysis. Rather than pigeonhole the case as involving either pilot error or product defect, the Court assumed that both would be issues at trial.
 
 
 58
 We think that the district court in this case entangled itself sufficiently in the facts. On remand, the defendants submitted extensive affidavits and supplemental briefs in support of their contention "that faulty maintenance and pilot error were the proximate causes of the aircrash, rather than any defective component." 736 F.Supp. at 666. After reviewing these submissions, the district court concluded that "[t]here is evidence to support defendants' position concerning the proximate cause and the liability of the potential third party defendants." Id. at 667. In short, the court immersed itself in the record, found support for both Lacey's products liability claim and defendants' assertions of pilot error and negligent maintenance, and then proceeded to examine the necessary sources of proof. At this stage of the case, such analysis suffices.
 
 
 59
 E. Is the Piper/Gulf Oil Balancing Exercise a Quantitative Or Qualitative Exercise?
 
 
 60
 The final consideration in the methodology for resolving forum non conveniens motions is the determination of the nature of the balancing exercise. Unlike the dissent, we view the task of balancing the Gulf Oil private and public interest factors as essentially qualitative, not quantitative. The dissent, as we read it, intimates that an appellate court should refrain from disturbing a trial court's forum non conveniens dismissal if a simple majority of the applicable Gulf Oil factors favors dismissal. We think that the dissent oversimplifies the analysis contemplated by the Supreme Court in Gulf Oil by reducing it to a quasi-arithmetic computation (or at least suggesting that it may be so reduced).
 
 
 61
 Although the Gulf Oil Court presented its eleven private and public interest factors as rough equals, the Supreme Court surely did not promulgate a mechanical jurisprudence. We believe instead that, depending on the case, some factors are "more equal" than others. If, for example, the barriers to obtaining access to essential sources of proof in the foreign forum are so severe as to render that forum (practically speaking) an inadequate alternative, that consideration (i.e., "ease of access to sources of proof") cannot be viewed as a run-of-the-mill criterion easily trumped by a countervailing numerical count. As will be seen, that is the case here.
 
 
 62
 IV. THE RELEVANT PRIVATE AND PUBLIC INTEREST FACTORS
 
 
 63
 Because the district court determined that several private and public interest factors are "neutral" in this case, and because Lacey does not challenge the court's assessment of every factor, we will only discuss in detail those factors that continue to have relevance to the resolution of defendants' forum non conveniens motions.
 
 
 64
 A. Access to Sources of Proof in British Columbia
 
 
 65
 The main impetus for the district court's dismissal was its belief that British Columbia "would be capable of dealing with this litigation as a unified whole." 736 F.Supp. at 667. In particular, the court thought that British Columbia was a forum in which Lacey could prosecute his products liability action and the defendants could institute actions for contribution or indemnity against several potential third-party defendants. This analysis unravels, however, if Lacey would not have access in British Columbia to the necessary sources of proof.[10] Appreciating the significance of ensuring Lacey's access to proof in British Columbia, the court conditioned its dismissal "on defendants making all relevant witnesses and documents in their control available to plaintiff in the alternative forum for discovery and trial." Id. at 664. Because the district court thought that "the primary evidence on product liability would come from defendants' witnesses and records," it believed that this condition would remedy all access to proof problems. Id. at 665. The court referred to this condition throughout its opinion, evincing its centrality to the court's dismissal. See, e.g., id. at 664, 666, 669.
 
 
 66
 Lacey argues that the district court's condition will not afford him access to sources of proof in British Columbia because evidence essential to his products liability claim is no longer in defendants' control. First, he points out that Hanlon & Wilson sold its aircraft exhaust system business in May of 1985 to Wall Colmonoy Corporation ("Colmonoy"), an Oklahoma corporation. Pursuant to the terms of this sale, all related documents were transferred to Colmonoy. Robert Bolte, the president of Hanlon & Wilson, thus has stated that Hanlon & Wilson "no longer has in its possession any documentation" with respect to the exhaust system in question. He also has averred that "[o]ther than [himself], Hanlon & Wilson does not have any employees who have knowledge of the exhaust system," and that his knowledge "would not be of material value unless [he] were given opportunity to review" documents now in Colmonoy's possession.
 
 
 67
 Second, Lacey maintains that the passage of time has removed from Cessna's and Teledyne's control evidence which may prove critical to Lacey's lawsuit. The relevant exhaust system was designed by Hanlon & Wilson and Cessna in approximately 1966. This exhaust system, however, began to experience difficulties in the early 1970's, and was thus redesigned in the mid-1970's by Cessna and another company. In light of this long history and the transience of the contemporary corporate world, many potentially relevant witnesses may no longer be employed by Cessna. Similarly, because the aircraft's engines were manufactured by Teledyne more than nine years ago, the same problem exists with respect to that company--i.e., personnel with relevant knowledge may no longer be subject to its control.
 
 
 68
 An analogous situation existed in Lony, in which the district court had entered a similar order requiring the defendant to produce in the alternative forum all evidence under its control. 886 F.2d at 631. However, the defendant in Lony, like Hanlon & Wilson here, had sold the relevant business to another corporation. Id. at 630. The plaintiff thus argued that some of the documents and witnesses essential to its action were now outside of the defendant's control. We reversed the court's forum non conveniens dismissal, in part because documents in the United States, but outside of the defendant's control, might not be available in the foreign forum. See id. at 639 ("[The defendant] has agreed to make its documents available in [the alternative forum], but third party documents such as those in the control of [the purchaser of the relevant business] would not be available under that agreement. Overall, considerably more evidence in the form of documents would be available if the trial were held in the United States.").[11]
 
 
 69
 The defendants were unable to rebut Lacey's access to proof argument. At oral argument, Cessna sought to assuage our concerns by assuring us that it possessed sufficient documents and witnesses to satisfy Lacey's needs. This strikes us as something the district court should examine. The district court assumed that the evidence essential to Lacey's products liability action is still in defendants' custody. This assumption, as noted above, was central to the court's entire calculus, but unfortunately, it appears to have arisen from a misapprehension. It now appears that Hanlon & Wilson has no evidence in its control concerning the aircraft's exhaust system, and that some vital witnesses may now be former employees of Cessna and Teledyne. We therefore agree with Lacey's contention that the district court did not adequately consider this private interest factor. The district court should ascertain (on the remand which follows) whether Lacey would have access to essential sources of proof in British Columbia. Of particular interest is whether Cessna has in its control sufficient evidence pertaining to the exhaust system at issue here.
 
 
 70
 The dissent contends that, in instructing the district court to inquire whether Lacey will have access to essential sources of proof at trial in British Columbia, we are compelling an overly speculative exercise. We disagree. The district court on remand need not pinpoint specific pieces of evidence, measure their probative value, and then determine their availability at trial in British Columbia. Rather, the court simply must identify generically what sources of proof are likely to be critical to Lacey's cause of action and then ascertain whether Lacey will enjoy access to those sources of proof at trial if his claim is litigated in British Columbia. This inquiry, we think, is neither unduly speculative nor particularly burdensome.
 
 
 71
 B. Means Available in British Columbia to Discover Non-Party Witnesses and Documents Located in the United States: Are They Adequate to Afford Lacey Access to Essential Sources of Proof at Trial in British Columbia?
 
 
 72
 If the witnesses and documents essential to Lacey's products liability action are no longer in defendants' control, the critical issue becomes whether Lacey can discover in British Columbia evidence in the possession of non-parties in the United States, such as Colmonoy and Cessna's and Teledyne's former employees. Based on the affidavit of J.J. Camp, Q.L., a British Columbia lawyer, Lacey contends that "no discovery is possible under British Columbia's practice as to non-party witnesses in the United States." Camp states in his affidavit:
 
 
 73
 Depositions of foreign witnesses pursuant to Letters of Request can be obtained but only for the purpose of use at trial and not for the purpose of discovery.... The issuing of a Letter of Request to a foreign government ... is a very serious matter often involving great expense and delay. The application to the court in British Columbia must set out the evidence the witness will give, and must show that the evidence is material. When an order is made, the Letter of Request is sent by the party who obtains it to the Secretary of State for External Affairs of Canada.... The Under Secretary of State for External Affairs of Canada forwards the Letter of Request to the United States Department of State. The material is then sent by the United States Department of State to the United States Department of Justice which forwards it to the office of the District Attorney in the district where the witness is or resides.
 
 
 74
 Camp also reports that a British Columbia court will not order a non-party outside of that province to produce documents, because the court could not compel compliance with such an order. Although this passage of the Camp affidavit deals specifically with documents in other Canadian provinces, it would apply a fortiori to documents in the possession of non-parties in the United States.
 
 
 75
 Teledyne rejoins that "the Nathason Affidavit submitted to the District Court establishes that letters rogatory and other procedures can be used in Canada to obtain discovery in the United States." George Nathason, Q.L., also a British Columbia lawyer, states in his affidavit that:
 
 
 76
 Rule 38 of the Rules of Court ... sets out the procedure by which a litigant in British Columbia proceedings is able to obtain the evidence of a citizen or resident of the United States who is unwilling to attend at trial in British Columbia to testify. Essentially, the Supreme Court of British Columbia may grant an order requesting the assistance of a foreign court to summons the unwilling witness to testify within the jurisdiction of the foreign court and the transcript of such examination may be placed in evidence at the trial in British Columbia. The form of the order by the British Columbia Court is to permit the issuance of a letter of request to the judicial authority of another jurisdiction and this letter of request is sent by the Canadian litigant to the Under Secretary of State for External Affairs of Canada pursuant to Rule 38(6).
 
 
 77
 We do not read the Nathason affidavit as necessarily conflicting with the Camp affidavit. First of all, Nathason appears to agree with Camp's assertion that foreign witnesses' testimony can be obtained only for use at trial, and not for discovery.[12] In addition, the procedure whereby a litigant in British Columbia applies for a letter of request to obtain such trial testimony appears cumbersome regardless of which expert's account is credited. More importantly, nothing in either affidavit indicates that a British Columbia court would compel a non-party in the United States to produce documents in its possession. We therefore suspect that defendants' former employees in the United States could not be deposed in British Columbia for discovery purposes, and that documents which are no longer in defendants' custody, especially those which were transferred by Hanlon & Wilson to Colmonoy, also would be unavailable in British Columbia.
 
 
 78
 Despite the clear import of these affidavits, the district court, after "hav[ing] reviewed the pertinent rules for foreign discovery," concluded that British Columbia "affords plaintiff ample opportunity to obtain relevant information." 736 F.Supp. at 665. This conclusion, however, was premised on the assumption that "the primary evidence on product liability would come from defendants' witnesses and records," which would be available in British Columbia under defendants' agreement to produce all documents and witnesses in their possession. Id. As noted in Section IV.A. of this opinion, that assumption now appears to be unfounded. According to Lacey (and the president of Hanlon & Wilson, Robert Bolte), the primary evidence on products liability will not come from defendants' witnesses and records, because the lion's share of that evidence--perhaps all of it--is now in the possession of a third party, Colmonoy. If on remand this representation proves true, then the premise on which the district court depended in analyzing the means available in British Columbia to discover evidence has been undermined. The district court on remand therefore should reconsider whether British Columbia's discovery rules will afford Lacey access to essential sources of proof at trial with the understanding that much of the evidence necessary to Lacey's action might be outside of defendants' control.
 
 
 79
 The dissent, we think, skews our analysis of British Columbia's discovery rules by recasting its ultimate focus. In examining the possible avenues for discovery in British Columbia, we are not emphasizing the importance of discovery qua discovery. To the contrary, our discussion of the means available in British Columbia to discover evidence in the United States is really just another component of our access to sources of proof analysis. If evidence essential to Lacey's cause of action is no longer in defendants' control, then British Columbia's discovery regime most likely will serve as Lacey's primary tool in obtaining access to sources of proof for use at trial.
 
 
 80
 Furthermore, the dissent attacks our discovery/access to proof analysis by suggesting that we have overemphasized this consideration. In this regard, it is important to underscore that this case is atypical because a dismissal on forum non conveniens grounds might foreclose entirely Lacey's access to essential sources of proof. Generally, the access to proof factor is defined as "relative ease of access to sources of proof." Gulf Oil, 330 U.S. at 508, 67 S.Ct. at 843 (emphasis added). Implicit in this phraseology is that the plaintiff could, if necessary, gain access to essential sources of proof in either forum. This is normally the case because the evidence essential to plaintiff's cause of action is usually under the defendant's control. By contrast, Lacey asserts here (and not without basis) that if his complaint is dismissed, he will be unable to obtain in British Columbia evidence that is essential to his products liability claim. In essence, therefore, Lacey is not claiming that British Columbia is an inconvenient forum, but that it is an inadequate forum.[13]
 
 
 81
 The dissent ignores this point, treating the potential access to proof problem in this case as just another garden variety Gulf Oil factor entitled to the same weight as other more mundane factors such as the imposition of jury duty on people of an unrelated forum. We, however, view the potential barriers to access to proof in British Columbia with far more alarm. It would be fundamentally unfair, we suggest, to dismiss Lacey's action against three domestic corporations (over which there is federal jurisdiction) on forum non conveniens grounds and send him to a forum where he might be unable to gain access to essential sources of proof. To do so, we submit, would be akin to interring Lacey's (perhaps meritorious) products liability action, and we do not read Piper as compelling so harsh a result. In so reading Piper, we have neither substituted our judgment for that of the district court nor reduced the multi-factor Gulf Oil/Piper analysis to one factor. We instead have read Piper as prescribing a qualitative not quantitative balancing. See supra at 182.C. Application of Foreign Law
 
 
 82
 The Supreme Court observed in Piper that "the need to apply foreign law pointed towards dismissal." 454 U.S. at 260, 102 S.Ct. at 268. Here, the district court, believing that "British Columbia has a decidedly greater interest in this litigation," determined that British Columbia law would apply if Lacey's action were to proceed before it, and hence counted this factor as favoring dismissal. 736 F.Supp. at 668. Lacey contends that the court's choice of law analysis was flawed. We agree.[14]
 
 
 83
 In a diversity action, the district court must look to the conflicts regime of the forum state. See Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Pennsylvania's leading case in this area, as the district court correctly determined, is Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796 (1964). In that case, the Pennsylvania Supreme Court abandoned the traditional lex loci delicti conflicts rule under which the substantive rights of the parties had been governed by the law of the place of the wrong. In its stead, the Court substituted "a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." Id. at 21, 203 A.2d at 805. As we recognized in Melville v. American Home Assurance Co., 584 F.2d 1306 (3d Cir.1978), this new conflicts methodology has evolved into a hybrid approach that "combines the approaches of both Restatement II (contacts establishing significant relationships) and 'interest analysis' (qualitative appraisal of the relevant States' policies with respect to the controversy)." Id. at 1311.
 
 
 84
 Under Pennsylvania law, before assessing the governmental interests of the jurisdictions whose law may control and examining their contacts with the dispute, we must determine whether there is a "false conflict" between the ostensibly competing bodies of law. See Kuchinic v. McCrory, 422 Pa. 620, 623-24, 222 A.2d 897, 899-900 (1966); Cipolla v. Shaposka, 439 Pa. 563, 565, 267 A.2d 854, 855 (1970). A false conflict exists if only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law.[15] In such a situation, the court must apply the law of the state whose interests would be harmed if its law were not applied. We suspect that this case presents a false conflict.
 
 
 85
 We are guided here by our decision in Reyno v. Piper Aircraft Co., 630 F.2d 149 (3d Cir.1980).[16] Piper involved a suit against two American manufacturers brought by the personal representatives of several Scottish citizens who were killed in a plane crash in Scotland. In deciding whether to apply Pennsylvania's strict liability law or Scotland's negligence law, we inferred from our understanding of basic tort law the general policies that underlie these competing standards of care. We hypothesized, first, that Scotland eschewed strict liability in favor of a negligence standard in order to encourage industry within its borders. We similarly opined that Pennsylvania adopted strict liability in order to shift some of the burden of injuries from consumers onto producers and to induce manufacturers to be more careful.[17] Based on our estimate of the two jurisdictions' interests, we concluded that there was a false conflict:
 
 
 86
 Applying Pennsylvania's strict liability standard to its resident manufacturer would serve that state's interest in the regulation of manufacturing. Scotland's interest in encouraging industry within its borders would not be impaired, however, by applying a stricter standard of care on a foreign corporation which has no industrial operation in Scotland. Furthermore, Scotland would have no interest in denying compensation to its residents for the purpose of benefiting a foreign corporation. Finally, imposition of strict liability on Piper cannot be said to be unfair to it. Inasmuch as Pennsylvania, the state in which Piper makes its product, and the vast majority of American jurisdictions in which most of Piper's aircraft are sold and fly, have strict liability, that is the legal standard under which it plans its operations.
 
 
 87
 630 F.2d at 168 (emphasis in original) (footnote omitted). Because Pennsylvania's interest could be served without interfering with any significant interest of Scotland, we determined that Pennsylvania law should apply.
 
 
 88
 We think that this reasoning applies with equal force to the case sub judice. The conflict here appears to result primarily from the fact that Pennsylvania has adopted strict liability, whereas British Columbia has not. Reasoning by analogy from Piper, however, we believe that this is a false conflict. Applying Pennsylvania law of strict liability would further Pennsylvania's interest in deterring the manufacture of defective products and in shifting the costs of injuries onto producers, but would not impair British Columbia's interest in fostering industry within its borders.[18] Conversely, applying British Columbia's negligence standard would not serve British Columbia's interest, but would harm Pennsylvania's interest. In view of this analysis, it appears that this case, like Piper, presents a false conflict, and that the district court probably should apply the law of Pennsylvania--the jurisdiction whose interests would be damaged if its law were not applied.
 
 
 89
 Absent detailed research into the policies undergirding Pennsylvania and British Columbia law, however, and at this stage of the litigation with the record still relatively undeveloped, we are reluctant to declare with finality that Pennsylvania law applies in this case. We think, nonetheless, that Piper raises real doubts regarding the district court's conclusion that British Columbia law would apply. We thus think that the court incorrectly held that the need to apply foreign law "weighs strongly in favor of dismissal." Instead, we believe that this factor is neutral.[19]D. Summary: Balancing the Relevant Factors
 
 
 90
 Relying heavily on Piper, the district court stated that British Columbia's ability to resolve this dispute in a single proceeding "weighs strongly in favor of dismissal." 736 F.Supp. at 667. More specifically, the court noted that potential third-party defendants, such as the pilot, the owner of the aircraft, and the maintenance firms, although not subject to personal jurisdiction in Pennsylvania, could be impleaded in British Columbia, thus bringing all potentially culpable parties before one forum. On the other hand, the court was concerned that if Lacey's action were allowed to proceed in Pennsylvania, the necessity of two suits would burden unduly both the parties and the courts. In sum, the district court thought that "[a] single court faced with the complete controversy is more likely to see the litigation as a unified whole and to bring consistency and equity to all parties." Id.
 
 
 91
 Lacey concedes the merit of this position; nonetheless he contends that the court erred by according this one factor conclusive weight. As a general rule, a trial court may not predicate a forum non conveniens dismissal on a single factor. See Piper, 454 U.S. at 249-50, 102 S.Ct. at 263 ("If central emphasis were placed on any one factor, the forum non conveniens doctrine would lose much of the very flexibility that makes it so valuable."); In re Air Crash, 821 F.2d at 1163 ("The Court in both Gulf Oil and Koster emphasized that no one private or public interest factor should be given conclusive weight...."). We do not think, however, that the district court contravened this rule. The court instead concluded that several factors favor dismissal, including imposition of jury duty on people of an unrelated forum, local interest in local controversies, and other burdens. Because the court's analysis of these factors was reasonable, we think that it did not improperly accord one factor conclusive weight. Moreover, its holding that British Columbia's ability to join all parties favors dismissal is consistent with Piper.
 
 
 92
 The district court's laudable effort to have this lawsuit litigated in a forum that can gather all of the parties and can consider all of their claims together would nonetheless fail if the dismissal would render Lacey unable to prosecute his case. The court on remand therefore must reasonably assure itself that Lacey would have access to essential sources of proof in British Columbia. If the court determines that essential evidence is in the possession of non-parties in the United States, it should then inquire whether Lacey would have access to such evidence at trial in British Columbia law. If the court ultimately concludes that Lacey would have access in British Columbia to sufficient evidence in support of his products liability action, and if this conclusion is fairly supported, we think that the dismissal of this case on forum non conveniens grounds would not constitute an abuse of discretion, notwithstanding the court's imperfect choice of law analysis. If, however, the court fairly concludes that Lacey would not have access to essential sources of proof in British Columbia, we think that, as a matter of law, the balance of the relevant private and public interest factors, when viewed in conjunction with the deference due Lacey's forum choice, would not favor dismissal.[20] As to what evidence is "essential," the district court, of course, retains its traditional discretion.
 
 
 93
 The dissent forcefully argues that, by so structuring the district court's discretion on remand, we have erred in two significant respects. First, the dissent asserts, we have improperly placed dispositive weight on a single factor (i.e., access to sources of proof) and, in so doing, have ignored the importance, in the Gulf Oil/Piper universe, of gathering all potential parties before a single court. Second, the dissent contends, we have unduly cabined the discretion of the district court on remand, thus contravening the spirit and admonitions of Piper. We disagree.
 
 
 94
 As noted above, we have accorded the access to proof factor such weight here because we believe that it would be unjust to dismiss a complaint on forum non conveniens grounds if such a dismissal would be fatal to plaintiff's cause of action. We do not intend to minimize the importance of getting all concerned parties under one judicial roof--if possible. But where the roof is so leaky that the plaintiff cannot get secure footing and is thereby deprived of the ability to marshal evidence in support of his or her case, that supplies the exception that proves the rule.
 
 
 95
 Given this view, we have attempted, in an effort to expedite the progress of this case, to offer the district court guidance in approaching its tasks on remand. For almost four years, Lacey and his antagonists doggedly have litigated the full spectrum of forum non conveniens issues. In remanding this case (for the second time), we do not wish to send the parties back to square one. We therefore have tried to focus the district court's inquiry on remand to a single factor, which it is free to determine on the facts and the law. By articulating a formula into which the district court can plug its access to proof answer, we hope to obviate the need for a third or fourth appeal. We do not think that the Piper Court intended its decision to allow such ping-pong between trial and appellate courts to continue unabated, producing delay that inevitably harms injured plaintiffs.
 
 
 96
 The district court's order of dismissal on forum non conveniens grounds therefore will be reversed and the case remanded for further proceedings consistent with this opinion.
 
 
 97
 LOUIS H. POLLAK, District Judge, concurring.
 
 
 98
 I join the court's judgment and its trenchant opinion.
 
 
 99
 For the reasons set forth in the court's opinion in careful detail, remand is called for. On remand, as the opinion states (pages 189-190), "[i]f the [district] court ... concludes that Lacey would have access in British Columbia to sufficient evidence in support of his products liability action, and if this conclusion is fairly supported, we think that the dismissal of this case on forum non conveniens grounds would not constitute an abuse of discretion;" but "[i]f ... the [district] court fairly concludes that Lacey would not have access to essential sources of proof in British Columbia, we think that, as a matter of law, the balance of the relevant private and public interest factors, when viewed in conjunction with the deference due Lacey's forum choice, would not favor dismissal."
 
 
 100
 I fully subscribe to the foregoing conclusions and to the analysis which underlies them. I write separately to make the point that I would reach the same result by following an alternative analytic pathway--one which the court's opinion points to but finds unnecessary to pursue. Specifically, the court's opinion (page 186, footnote 13) points out that "we have analyzed this access to proof consideration as a Gulf Oil private interest factor. While it might have been more logical to address it under the 'inadequate alternative forum' rubric, we discuss this consideration as a 'relative ease of access to sources of proof' factor in order to fit more neatly into the existing Gulf Oil/Piper framework."
 
 
 101
 In this case, I think it is more logical to address the access to proof factor "under the 'inadequate alternative forum' rubric." In my judgment, if British Columbia is not a forum in which Lacey can get access to proof sufficient to make out his products liability case, British Columbia is not an adequate alternative forum. This seems to me to follow from the teaching of Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Piper instructs that "[a]t the outset of any forum non conveniens inquiry, the court must determine whether there exists an alternative forum. Ordinarily, this requirement will be satisfied when the defendant is 'amendable to process' in the other jurisdiction. Gilbert, 330 U.S. at 506-507, 67 S.Ct. at 842. In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative forum, and the initial requirement may not be satisfied." Id. 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22. I appreciate that, under Piper, a plaintiff who has brought suit in a United States district court will not be heard to contend that a proposed alternative foreign forum is inadequate because it does not offer the same copious armament of causes of action that would be available in the American forum. Thus, in the present case, if British Columbia were a jurisdiction that had not been persuaded of the virtues of Section 402A of the Torts 2d Restatement or some cognate formulation of products liability law, that gap in its doctrinal armament would not of itself render British Columbia an inadequate alternative forum. But if British Columbia were to purport to entertain products liability cases and yet could not assure a plaintiff in Lacey's posture that he would be able to get access to evidence essential to prove his claim, then I would conclude that British Columbia would be as inadequate an alternative forum as if "the remedy offered ... [were] clearly unsatisfactory." Ibid.
 
 
 102
 NYGAARD, Circuit Judge, dissenting.
 
 
 103
 I respectfully dissent in part, and concur in the balance. I do not join the majority's analysis of the forum non conveniens factors disputed on appeal, or its order which unduly restricts the district court's discretion to rebalance and dismiss on remand, because I believe these aspects of the opinion stray erroneously from Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).[1] I will, however, join the majority opinion in other respects.[2]
 
 
 104
 The majority and concurring opinions make a single forums non conveniens factor (access to sources of proof at trial) dispositive of defendants' motion to dismiss. They substitute plenary review of the district court's determination that British Columbia is a suitable alternative forum, for what should be deferential review of the district court's Piper balancing. The majority admits it does this indirectly under the rubric of balancing analysis. See maj. op. at 186, n. 13. The concurring opinion says so directly. In this manner, both opinions stretch to preserve Lacey's strict products liability claim, but at the expense of preserving both restrained appellate review, and the deference due district courts.
 
 
 105
 I would not resolve this appeal by reconsidering the merit of the district court's determination that British Columbia is an adequate alternative forum for Lacey. That determination already is the law of this case. The district court decided the adequacy issue as a threshold matter. See 736 F.Supp. at 663. Lacey does not challenge the substance of that decision on appeal, but rather attacks it with a technicality,[3] ] an approach the majority rightly rejects. The entire panel "endorses" (at least nominally) the district court's decision that British Columbia is a suitable forum for Lacey. See maj. op. at 180, n. 7.[4]
 
 
 106
 This Court should confine itself to deferential review of the reasonableness of the district court's analysis and balancing of the relevant public and private interest factors. I would affirm because the district court's forum non conveniens balancing and dismissal was reasonable, even if it thought mistakenly that defendants retain more relevant evidence than they really do.[5] Reanalysis of the access to proofs factor is unnecessary because at this pre-discovery stage, inquiry into whether Lacey would be able to access "essential" proofs would be speculative at best, and the district court can say little more than it already has.
 
 
 107
 Even assuming arguendo that a remand is needed because the district court mistook who controls all the evidence Lacey wants, and that the majority's legal analysis of the three contested factors is not flawed (i.e., two of the three disputed factors are neutral while the access to proofs factor might possibly weigh against dismissal in this case), at least three uncontested factors will always preponderate in favor of dismissal. This arithmetic and our deferential standard of review belies the majority's encroachment on the district court's right to rebalance in the first instance and dismiss on remand, whatever the outcome of reanalysis of the access to proofs factor. I would dissent on this ground alone.
 
 I.
 
 108
 The Supreme Court made clear in Piper that we review a district court's forum non conveniens dismissal only for abuse of discretion. We must defer to the district court's "substantial" discretion to evaluate and balance Gulf Oil[6] factors.
 
 
 109
 The forum non conveniens determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.
 
 
 110
 454 U.S. at 257, 102 S.Ct. at 266-67.
 
 
 111
 The Court reversed us in Piper because we substituted our own judgment of the relevant public and private interest factors for that of the district court. Id. I believe the majority in this case makes the same error (in several respects) and invites the same response.
 
 
 112
 Here, the majority admittedly "limits the [district] court's discretion to dismiss on forum non conveniens grounds ... if the court concludes that Lacey would not have access at trial in British Columbia to essential sources of proof." Maj. op. at 189, n. 20 (emphasis in original). The majority reasons as follows:
 
 
 113
 [i]f ... the court fairly concludes that Lacey would not have access to essential sources of proof in British Columbia, we think that, as a matter of law, the balance of the relevant private and public interest factors, when viewed in conjunction with the deference due Lacey's forum choice, would not favor dismissal.
 
 
 114
 Id. at 189 (emphasis in original).
 
 
 115
 As discussed in more detail below, the majority's remand order impermissibly substitutes its own overall balance of the relevant factors for the district court's discretion to rebalance in the first instance on remand. The majority also substitutes its own judgment when analyzing particular factors. Instead, it should defer to the district court's legal treatment of Gulf Oil factors contested by Lacey, unless the district court has clearly erred as a matter of law.
 
 II.
 
 116
 As I calculate it, the district court determined that six of eleven Gulf Oil factors weighed in favor of dismissing the action Lacey brought in the Western District of Pennsylvania, and that the remaining five Gulf Oil factors were either neutral or irrelevant.[7] In other words, the district court found that six factors favored proceeding in British Columbia, whereas none favored trial in Pennsylvania.
 
 
 117
 Lacey appeals the district court's decision on only three factors: relative ease of access to sources of proof; relative advantages and obstacles to a fair trial; and difficulties associated with application of foreign law. See maj. op. at 173. Thus, Lacey and the majority must concede the district court concluded correctly that three other uncontested factors weighed in favor of dismissal: imposing jury duty on Pennsylvanians would be to impose upon the people of an unrelated forum, see 736 F.Supp. at 667; British Columbia has a significant local interest in the controversy which easily outweighs any interest Pennsylvania may have, id. at 667-68; and the presence in British Columbia of suits brought by five other plaintiffs involved in the same air crash means that a single proceeding in British Columbia would efficiently eliminate duplicative judicial expenditures in Pennsylvania. Id. at 669.
 
 
 118
 The majority analyzes the three contested factors as follows. It remands the relative access to sources of proof factor for reanalysis, ordering the district court to decide specifically whether, in a British Columbia proceeding, Lacey would be able to access "essential" evidence for trial. Maj. op. at 173-174, 189-190. If not, the majority holds "as a matter of law" that despite other factors weighing in favor of dismissal, on remand the district court must deny defendants' motion to dismiss. Id. at 189-190.
 
 
 119
 As for the second contested factor, relative advantages and obstacles to a fair trial, the district court determined it "weighs strongly in favor of dismissal", 736 F.Supp. at 667, because the British Columbia forum (but not the Western District of Pennsylvania) "would be capable of dealing with this litigation as a unified whole", by joining all potentially culpable parties in a single proceeding, including third-party defendants impleaded by defendants in their claims for indemnification and contribution under Canadian law.[8] Id. The majority rejects the district court's reasoning on this point by saying it
 
 
 120
 unravels ... if Lacey would not have access in [a] British Columbia [proceeding] to the necessary sources of proof.... [A] dismissal on forum non conveniens grounds would not really collect all related actions and potentially culpable parties in one forum if Lacey's ability to prosecute his cause of action would be emasculated in the process.
 
 
 121
 Maj. op. at 183, n. 10. Thus the majority discounts, if not entirely eliminates, the independent significance of British Columbia's exclusive ability to join Lacey's claim and defendants' third-party actions.
 
 
 122
 Finally, concerning the third disputed factor, difficulties arising from application of foreign law, the district court decided it favored dismissal for two reasons.[9] The majority disagrees with the district court's conclusion, and holds this factor is neutral. The majority reasons by saying, but expressly not deciding, that Pennsylvania strict products liability law should "probably" apply if Lacey's action is tried in the Western District of Pennsylvania, and so there is no application of foreign law problem associated with a Pennsylvania proceeding. Maj. op., 188. In neutralizing this factor, the majority does not respond to the district court's finding that defendants' third-party indemnification and contribution actions brought under Canadian law in British Columbia will pose application of foreign law problems for the parties and the courts, even if Lacey proceeds in Pennsylvania under Pennsylvania tort law. See above, note 8.
 
 
 123
 In summary then, the majority reverses the district court's discretionary dismissal without finding that any Gilbert factor weighs against dismissal. Even if the ordered reanalysis of the access to proofs factor determines on remand that this one factor favors Lacey's chosen forum, at least three uncontested factors[10] would still preponderate in favor of dismissal; and also (if the majority opinion leaves any independent significance to it) the district court's finding that only British Columbia can adjudicate plaintiff's case and defendants' third-party actions as a unified whole.
 
 
 124
 These mathematics[11] underlying the majority opinion are enough to deter me from joining it. Given that three Gulf Oil factors will preponderate in favor of dismissal on remand, dismissal then should not be an abuse of discretion, even if the district court determines that the single access to proofs factor weighs in favor of a Pennsylvania proceeding. But even beyond these mathematics I am troubled by other aspects of the majority opinion.
 
 III.
 
 125
 I would not remand the access to proofs factor, because reanalysis of it is both unnecessary and speculative. The district court cannot reasonably be expected to say more on remand than it already has about the majority's principal concern: whether "the unavailability of civil discovery in British Columbia [creates] ... impediments that Lacey would face in gaining access to essential sources of proof at trial in that forum." Maj. op. at 185, n. 12. After reviewing British Columbia's foreign discovery procedures to determine whether Lacey "would be inhibited in obtaining discovery from non-party witnesses in the United States," 736 F.Supp. at 665, the district court concluded:
 
 
 126
 [A]lthough the process may be time-consuming, it affords plaintiff ample opportunity to obtain relevant information. [Furthermore] plaintiff always has old-fashioned informal discovery available to him, such as interviewing witnesses and obtaining statements.
 
 
 127
 * * * * * *
 
 
 128
 Finally ... while [British Columbia discovery rules] may prevent the orgiastic discovery that often occurs in our courts, we believe they provide a fair process for obtaining relevant information.
 
 
 129
 Id.
 
 
 130
 We should defer to the district court's conclusion about the consequences of British Columbia discovery rules for Lacey. The court did consider impediments to discovery, and I am satisfied its pragmatic analysis is reasonably complete even if it did not identify evidence "essential" to Lacey's case.
 
 
 131
 Aside from the question of necessity, another problem with ordering the district court to reanalyze whether Lacey can access "essential" sources of proof under British Columbia discovery rules, is that such analysis requires speculative inquiry into the identity of "essential" evidence. I do not see how at this pre-discovery stage of the proceedings, the district court can determine exactly what constitutes evidence "essential" to Lacey's case, let alone whether Lacey's access to it will vary with differences between Canadian and federal discovery rules.
 
 
 132
 Only actual discovery and trial will ascertain "essential" evidence. As the majority itself admits, "[n]o discovery has taken place; in fact, the defendants have not even answered Lacey's complaint. The district court, as a result, cannot now determine what the ultimate focus of trial will be...." Maj. op. at 181. By asking whether "essential" evidence falls within the scope of British Columbia discovery, the majority asks the district court to engage in the "complex exercises in comparative law" Piper expressly disapproves of. See 454 U.S. at 251, 102 S.Ct. at 263-64 (quoted below, at 196-197).
 
 
 133
 Accordingly, I would not remand for speculative reanalysis of the access to proofs factor. The district court has adequately addressed the majority's principal point of concern even without deciding what constitutes "essential" evidence. In any case, I would not predicate the district court's discretion to dismiss on whether a change in discovery rules would prejudice Lacey's case. See below, at 196-197.
 
 IV.
 
 134
 The majority's treatment of each of the three factors disputed on appeal troubles me because it deviates from Supreme Court teachings in Piper. The majority's theory of the case reduces multi-factor balancing to the outcome of a single factor (access to sources of proof); makes dismissal dependent on the differences between federal and Canadian discovery rules; eliminates the independent significance of British Columbia's ability to join Lacey's claim with defendants' third-party actions; and substitutes the majority's estimate of the application of foreign law factor without deciding that the district court's judgment on it was incorrect. To the extent each of these conflicts with Piper indicates the majority erred in analyzing the contested factors, I think the district court should be affirmed.
 
 A.
 
 135
 In Piper, the Supreme Court cautioned against reducing multi-factor forum non conveniens balancing to a single inquiry. "If central emphasis were placed on any one factor, the forum non conveniens doctrine would lose much of the very flexibility that makes it so valuable." 454 U.S. at 249-50, 102 S.Ct. at 262-63. Given that caution, I think the majority errs by placing central, indeed dispositive emphasis on the relative access to proofs issue.
 
 
 136
 The majority's remand order leaves the district court with two possibilities. First, if it determines Lacey can access "essential" sources of proof with British Columbia discovery procedures, then the district court is free to rebalance the relevant Gulf Oil factors.[12] But if the district court "fairly concludes" on remand that Lacey "would not have access to essential sources of proof in British Columbia", the district court cannot rebalance, because the majority holds a dismissal in these circumstances would constitute an abuse of discretion. Maj. op. at 189 (emphasis in original). The majority's remand order in effect makes reanalysis of the access to proofs factor dispositive.
 
 
 137
 The majority's treatment of the "fair trial" factor illustrates the same point. The majority compromises the independent significance of British Columbia's ability to join plaintiff's case with defendants' third-party claims, by making the importance of this circumstance contingent on the outcome of reanalysis of the access to proofs factor.[13] Given Piper 's caution against reducing multi-factor balancing to a single inquiry, I would not make the weight accorded any other factor, or the possibility of a dismissal on remand, turn on the outcome of reanalysis of the single access to proofs factor.
 
 B.
 
 138
 By holding that the district court's discretion to dismiss depends on whether Lacey can access "essential" proofs with Canadian discovery procedures, the majority rests the success of defendants' motion to dismiss on differences between federal and Canadian procedural law. Piper precludes this approach.
 
 
 139
 The Supreme Court instructed in Piper that a difference between the laws controlling in alternative fora should not be given substantial weight in forum non conveniens balancing.
 
 
 140
 [I]f conclusive or substantial weight were given to the possibility of a change in law, the forum non conveniens doctrine would become virtually useless.... [I]f the possibility of an unfavorable change in substantive law is given substantial weight in the forum non conveniens inquiry, dismissal would rarely be proper.
 
 
 141
 * * * * * *
 
 
 142
 [T]he possibility of an unfavorable change of law should not, by itself, bar dismissal.
 
 
 143
 454 U.S. at 250, 102 S.Ct. at 263 (emphasis supplied). The reason for the rule is clear; inquiring into the specifics of foreign law could quickly become mind-numbingly complex.
 
 
 144
 If the possibility of a change in law were given substantial weight, deciding motions to dismiss on the ground of forum non conveniens would become quite difficult.... [T]he courts would frequently be required to interpret the law of foreign jurisdictions.... [T]he trial court would ... have to compare the rights, remedies, and procedures available under the law that would be applied in each forum. Dismissal would be appropriate only if the court concluded that the law applied by the alternative forum is as favorable to the plaintiff as that of the chosen forum. The doctrine of forum non conveniens, however, is designed in part to help courts avoid conducting complex exercises in comparative law.
 
 
 145
 Id. at 251, 102 S.Ct. at 263-64 (emphasis added; citations omitted).[14]
 
 
 146
 Of course, the Piper Court was directly concerned with the differences between substantive laws applied by alternative fora, whereas the majority opinion here makes dismissal turn on differences between federal and Canadian discovery rules and related procedures. Nonetheless, the procedural/substantive distinction (hard to preserve in practice) does not make me believe Piper approves of giving substantial weight in balancing to a change in "procedural" rules. Furthermore, the Piper opinion itself contemplates that differences in procedural law might improperly enter the balance (see term "procedures", emphasized in Piper language appearing at 454 U.S. at 251, 102 S.Ct. at 263-64, quoted above).
 
 
 147
 The effect of changes in procedural laws on the outcome of any one party's case should not matter in forum non conveniens balancing: what is a limiting rule for one litigant, we must assume is limiting for all. Given Piper, I would not make the outcome of defendants' motion to dismiss dependent on the difference between federal and Canadian discovery rules.
 
 C.
 
 148
 Despite its caveat to the contrary, see maj. op. at 183, n. 10, the majority eliminates the independent significance of the relative advantages and obstacles to fair trial factor. The district court decided this factor weighed strongly in favor of dismissal because British Columbia (but not the Western District of Pennsylvania) can join Lacey's case against defendants with defendants' third-party actions for indemnification and contribution under Canadian law.
 
 
 149
 The majority holds instead that if the district court determines on remand that Lacey cannot access "essential" evidence under the British Columbia rules, the district court should not accord weight to British Columbia's ability to join together Lacey's claim and defendants' third-party claims. The majority says the importance of this factor "unravels" if Lacey is unable to access "essential" evidence in a British Columbia proceeding, because dismissal "would not really collect all related actions and potentially culpable parties in one forum if Lacey's ability to prosecute his cause of action would be emasculated in the process." Maj. op. at 183, n. 10.
 
 
 150
 The majority's approach to the "fair trial" factor is clearly contrary to the Supreme Court's opinion in Piper. The Piper Court said that the inability of tort defendants to implead third-party defendants in plaintiff's chosen forum was an important "fair trial" factor weighing in favor of dismissal. 454 U.S. at 259, 102 S.Ct. at 267-68.
 
 
 151
 I would follow Piper and give British Columbia's ability to join all potentially liable defendants together in a single proceeding independent significance in any rebalancing on remand, irrespective of whether Lacey can access "essential" evidence from British Columbia. Given the independent weight it deserves under Piper, British Columbia's ability to join all possible defendants together is one of four factors favoring dismissal whose combined weight cannot be ignored.[15] While these four factors do not necessarily compel dismissal as a matter of law, they leave no room for the majority's legal conclusion that the district court has no discretion but to deny defendants' motion to dismiss, if Lacey cannot access certain proofs with British Columbia discovery mechanisms.
 
 D.
 
 152
 As indicated above, see at 193-194, the majority neutralizes the significance of the application of foreign law factor. The district court determined this factor weighed in favor of dismissal on two grounds. Id., at 193-194, note 8. There are several problems with the majority's treatment of this factor.
 
 
 153
 First, the majority reaches its conclusion by substituting its legal estimate that Pennsylvania tort law should "probably" apply in a Pennsylvania proceeding, for the district court's final determination that Canadian law will apply. The majority does not decide the district court erred making its determination; rather, the majority says that without "detailed research into the policies undergirding Pennsylvania and British Columbia" tort law, it "is reluctant to declare with finality that Pennsylvania law applies in this case." Maj. op. at 188.
 
 
 154
 The substitution of the majority's view for the district court's legal judgment controverts Piper 's admonition that this court should defer to the district court's forum non conveniens reasoning, unless the district court clearly abused its discretion. See above at 192-193. Although the issue of what substantive law would apply in Lacey's chosen forum is a legal question over which this court typically exercises plenary review, the majority has expressly avoided deciding that question. Accordingly, it should defer to the district court's legal conclusion. Under an abuse of discretion standard of review, this court should not substitute its reasoned estimate of the law for the district court's final decision on the matter.
 
 
 155
 Second, the majority's view that Pennsylvania tort law will "probably" apply in a Pennsylvania forum, does not respond to the district court's alternative decision under the application of foreign law factor. The district court decided that even if Pennsylvania substantive law were applied to Lacey's case in the Western District of Pennsylvania, defendants' actions for contribution and indemnity would nonetheless pose "an array of possible problems concerning the application of differing law in the same controversy by two courts foreign to each other." 736 F.Supp. at 669. The district court concluded that these conflict of foreign law problems favored dismissal, because a British Columbia court "with authority over the entire controversy" would be in the best position to address the conflicts. Id.
 
 
 156
 I agree. Given the merit of the district court's observation that defendants' third-party actions would pose application of foreign law problems even if Lacey's case proceeds in Pennsylvania under Pennsylvania law; and because the district court did not clearly err deciding that Canadian tort law would apply in a Pennsylvania proceeding, I would defer to the district court's conclusion that the application of foreign law factor weighs in favor of dismissal.
 
 V.
 
 157
 Given my view that the majority's analysis of the three contested factors and its order restricting the district court's discretion to dismiss on remand are flawed in light of Piper, I would affirm rather than reverse the discretionary dismissal of Lacey's action. There is no need for rebalancing in this case because the district court's legal conclusions with respect to each relevant Gulf Oil factor were correct, and the balance it struck to dismiss was not an abuse of discretion. Reconsideration of Lacey's access to proofs problem would add little to what has already been said about Lacey's prospects under British Columbia discovery procedures, and would require undue speculation about what constitutes evidence "essential" to Lacey's case.
 
 
 158
 Nevertheless, if rebalancing is required because the district court misapprehended that defendants control all the evidence bearing on Lacey's products liability cause of action, I would not restrict the district court's discretion to dismiss on remand. Whether or not the access to proofs factor favors a Pennsylvania proceeding, the other relevant public and private interest factors justify a discretionary dismissal. And as I said at the start, I would not transform our review of the district court's discretionary balancing of Gulf Oil factors, into plenary reconsideration of the district court's threshold determination that British Columbia is an adequate alternative forum.
 
 
 159
 My position on this point does not change even assuming the majority correctly analyzes the three Gulf Oil factors contested on appeal. This Court should not restrict the district court's discretion to rebalance in the first instance and dismiss on remand, when at least three uncontested factors preponderate in favor of dismissal under the majority's theory of the case.
 
 
 
 *
 The Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 Lacey v. Cessna Aircraft Co., 674 F.Supp. 10 (W.D.Pa.1987), vacated, 862 F.2d 38 (3d Cir.1988), on remand, 717 F.Supp. 365 (W.D.Pa.1989), also on remand, 736 F.Supp. 662 (W.D.Pa.1990)
 
 
 [2]
 Specifically, the district court dismissed the case on the following conditions:
 
 
 [1]
 Defendants submit to personal jurisdiction in the alternative forum of British Columbia, Canada
 
 
 [2]
 Defendants waive any statute of limitations defense they might otherwise have in the alternative forum
 
 
 [3]
 Defendants make available to plaintiff in British Columbia, for discovery and trial, all relevant witnesses and documents within defendants' control, at defendants' expense
 
 
 [736]
 F.Supp. at 669
 
 
 [3]
 Nor was Cessna's tardy submission of March 30, 1990, improper. The purpose of this filing was to alert the district court that a related case, Bertram v. Teledyne, Inc., No. C 608 902 (Cal.Super.Ct. Aug. 31, 1989), had been dismissed by a California court on forum non conveniens grounds. Although this decision was seven months old when Cessna finally brought it to the court's attention, it was not inappropriate for Cessna to do so, even at such a late date. Cessna's filing consisted of a cover page and a copy of the California court's opinion. At the time of Cessna's submission, the district court was aware of the pendency of the California case and had not ruled on defendants' motions to dismiss. Cessna would have been remiss had it not apprised the court of the ultimate disposition of the California case
 Lacey also objects to Teledyne's submission of August 30, 1989. These papers consisted of Teledyne's comments on the status of the California case and its observation that Canadian tort law generally is less favorable to plaintiffs than its American equivalent. As discussed more fully below, we think that the district court acted well within its discretion in admitting these papers, even though they were filed out of time.
 
 
 [4]
 Hanlon & Wilson contends that it initially declined to submit supplemental briefs and evidentiary material because it intended to rely on the materials filed by Cessna and Teledyne. The history of the litigation tends to corroborate this assertion. When this case was originally before the district court, Hanlon & Wilson joined in Cessna's brief. Hanlon & Wilson also opted to join in the appellate briefs filed by Cessna and Teledyne in this court. Hanlon & Wilson has chosen this tactic apparently because it shares the same insurance carrier as Cessna and thus values the economy of scale that such a strategy promotes
 
 
 [5]
 Alternatively, Lacey contends that the district court at least should have factored Hanlon & Wilson's delay into its resolution of the defendants' forum non conveniens motions. In In re Air Crash, the court stated that "the timeliness of the [forum non conveniens ] motion is one of the private 'practical problems' to be considered" under the Gulf Oil/Piper framework. 821 F.2d at 1165 n. 30. Once again, however, we note that this portion of In re Air Crash, as its language plainly suggests, applies to the timeliness of the forum non conveniens motion itself, not to the timeliness of supporting material. In our view, the latter kind of delay, which is within the court's control via its scheduling authority, should not be factored into the forum non conveniens determination. A contrary rule, we think, would be inappropriate; for, as we have said, it would involve us in micro-management of the district court's docket
 
 
 [6]
 Lacey also contends that the district court erred by assuming, categorically, that a foreign plaintiff's forum choice is always due less deference than that of a domestic plaintiff. We disagree with Lacey's characterization of the district court's analysis. In Lony, we recognized that if a foreign plaintiff makes a sufficiently strong showing of convenience, his or her forum choice is entitled to the same degree of deference as a domestic plaintiff's. 886 F.2d at 634. In this case, the district court commented that "[b]ecause plaintiff is a foreign national with no connection to the forum, his choice is not entitled to the same degree of deference accorded a resident or citizen who chooses his home forum." 736 F.Supp. at 663. We do not think that this statement necessarily conflicts with Lony. As we read it, the district court stated that because Lacey has no connection to his chosen forum, he has not introduced sufficient evidence of convenience to be on the same footing as a domestic plaintiff. We therefore reject Lacey's allegation of legal error
 
 
 [7]
 The district court began its analysis by asserting that British Columbia is a suitable alternative forum. Because this point was not seriously contested, the court simply noted that:
 The accident occurred in British Columbia, the defendants are willing to submit to jurisdiction there, and plaintiff has not complained that he would be unable to obtain appropriate redress there.
 
 
 [736]
 F.Supp. at 663. Lacey, however, asserts on appeal that British Columbia is not an adequate alternative forum because Hanlon & Wilson did not consent in a timely fashion to that forum's jurisdiction. Since we have already rejected Lacey's timeliness argument, see supra at 176-78, we endorse the district court's conclusion that British Columbia is a suitable alternative forum. But see infra n. 13
 
 
 [8]
 Indeed, the district court mentioned the CASB's report only once:
 While the CASB report is subject to interpretation, it is irrelevant in this context. There is evidence to support defendants' position concerning proximate cause and the liability of the potential third party defendants. The resolution of such factual matters is for the jury. The CASB report is not binding on the jury and it certainly is not determinative in this context.
 
 
 [736]
 F.Supp. at 667
 
 
 [9]
 See Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). To be appealable under that doctrine, the order must, inter alia, be "completely separate from the merits of the action." Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2457-58, 57 L.Ed.2d 351 (1978)
 
 
 [10]
 In so noting, we do not intimate that the possibility of a comprehensive proceeding in British columbia lacks independent significance. Rather, we simply point out that a dismissal on forum non conveniens grounds would not really collect all related actions and potentially culpable parties in one forum if Lacey's ability to prosecute his cause of action would be emasculated in the process
 
 
 [11]
 In fact, the barriers to access to proof appear to be more formidable here than in Lony. In Lony, there was at least a factual question regarding the defendant's right to gain access to the transferred documents. See id. at 637 n. 4. Here, however, Hanlon & Wilson does not assert a contractual right to procure the necessary documents from Colmonoy. To the contrary, the entire tenor of the Bolte affidavit is that Hanlon & Wilson has severed all ties to its prior exhaust business. Lastly, we note that the relevant time frame in Lony was only about four years. But in this case, Lacey purports to require the testimony of employees from as far back as the 1960's. It is therefore more likely in this case than in Lony that personnel with relevant knowledge are no longer employed by the defendants
 
 
 [12]
 Ordinarily, this factor, by itself, would not militate against dismissal, for all that is necessary is access to proof at trial. Here, however, it appears that critical evidence is outside of defendants' control, that the procedure necessary to obtain the trial testimony of non-party witnesses in the United States is exceedingly rigorous, and that British Columbia courts will not compel non-parties in the United States to produce documents at trial. When viewed in conjunction with these other factors, the unavailability of civil discovery in British Columbia highlights and provides cumulative evidence of the serious impediments that Lacey would face in gaining access to essential sources of proof at trial in that forum
 Moreover, the questions of availability of discovery to identify relevant non-party witnesses residing outside of British Columbia and of putative access to the testimony of those witnesses at trial in British Columbia are inextricably intertwined. To obtain a letter of request, a litigant must identify in advance both the names of the non-party witnesses whose testimony is needed at trial and the likely content of that testimony. Therefore, absent at least some means to discover this essential information, Lacey may be unable to avail himself of letters of request to obtain the trial testimony of non-party witnesses residing in the United States.
 
 
 [13]
 Like Lacey, we have analyzed this access to proof consideration as a Gulf Oil private interest factor. While it might have been more logical to address it under the "inadequate alternative forum" rubric, we discuss this consideration as a "relative ease of access to sources of proof" factor in order to fit more neatly into the existing Gulf Oil/Piper framework
 
 
 [14]
 Lacey also asserts that the district court erred because it did not consider which law a British Columbia court would apply. Absent a finding that a British Columbia court would apply its own law, Lacey says, the district court could not properly count this factor as favoring dismissal. In other words, Lacey urges us to adopt a rule that would require the district court to ascertain which law would apply in the alternative forum. Such a rule, we think, would be inimical to one of the purposes underlying the forum non conveniens doctrine. The Supreme Court in Piper rejected an approach to forum non conveniens law that would have required courts to determine "what law would apply if the case were tried in the alternative forum." 454 U.S at 251, 102 S.Ct. at 263. In so doing, the Court emphasized that "[t]he doctrine of forum non conveniens ... is designed in part to help courts avoid conducting complex exercises in comparative law." Id. It would be perverse, we suggest, to say that trial courts should use the doctrine of forum non conveniens to avoid unnecessary applications of foreign law and yet require courts to apply foreign choice of law rules before availing themselves of the doctrine. We thus conclude that in resolving a forum non conveniens motion, the district court is not required to predict what law the foreign court would apply
 
 
 [15]
 By contrast, there is a true conflict when the governmental interests of both jurisdictions would be impaired if their law were not applied. If a true conflict exists, the court must determine which state has the greater interest in the application of its law
 
 
 [16]
 Although the Supreme Court ultimately found this court's forum non conveniens analysis to be erroneous, it did not reject our disposition of the choice of law question. See 454 U.S. at 260, 102 S.Ct. at 268
 
 
 [17]
 In discussing the "local interest in local controversies" public interest factor, the Piper Court commented that although "American citizens have an interest in ensuring that American manufacturers are deterred from producing defective products, ... the incremental deterrence that would be gained if trial were held in an American court is likely to be insignificant." 454 U.S. at 260-61, 102 S.Ct. at 268-69. This statement, while controlling our analysis of the "local interest in local controversies" factor, is inapplicable to our analysis of Pennsylvania choice of law rules. Indeed, nothing in Piper indicates that the Supreme Court intended this statement to govern trial courts' assessment of the "application of foreign law" public interest factor
 
 
 [18]
 The district court notes that "British Columbia certainly has some interest in protecting those providing service within its borders." 736 F.Supp. at 668. We agree, but this interest, like British Columbia's interest in promoting domestic industry, would not be impaired by the application of Pennsylvania's strict liability standard. In fact, British Columbia's interest in protecting individuals, like Lacey, who are working within its borders would be fostered even more by the application of a strict liability standard than by a negligence standard
 
 
 [19]
 The dissent also takes us to task for not formally deciding the choice of law issue, contending that, in the absence of such a final decision, we should defer to the district court. We respectfully disagree
 
 
 [20]
 We acknowledge that the state of affairs, as it ultimately develops on remand, may not be so cut and dried. Accordingly, we do not intend to restrict unnecessarily the district court's discretion. Our opinion limits the court's discretion to dismiss on forum non conveniens grounds only if the court concludes that Lacey would not have access at trial in British Columbia to essential sources of proof. If the district court determines on remand that the evidence unavailable to Lacey in British Columbia is not essential (e.g., it is merely cumulative or corroborative), the court is, of course, free to resuscitate its balance of the relevant private and public interest factors and to dismiss the case
 
 
 [1]
 In my view, the majority's analysis violates one or another of several Supreme Court teachings in Piper, namely: (1) the court of appeals must not substitute its own judgment for the district court's own balancing of relevant private and public interest factors; (2) multi-factor forum non conveniens analysis must not be reduced to an inquiry focusing on a single factor; (3) the outcome of a forum non conveniens dismissal motion must not depend on differences between laws of alternative fora; and (4) an alternative forum's ability to join all potentially culpable defendants in a single proceeding is a factor favoring dismissal which is entitled to independent significance in forum non conveniens balancing. Because I believe the majority has erred repeatedly under Piper when evaluating the three contested factors, I would affirm rather than remand
 
 
 [2]
 I join the majority's view that the district court: acted within its discretion accepting Hanlon & Wilson's untimely submissions; accorded adequate weight to plaintiff's forum choice; and immersed itself sufficiently in the facts of the case
 
 
 [3]
 Lacey said British Columbia is inadequate because defendant Hanlon & Wilson failed to make timely submissions on its forum non conveniens motion to the district court
 
 
 [4]
 In addition to improperly reaching the merits of British Columbia's adequacy as an alternative forum, I think the majority errs reducing the issue to analysis of differences in discovery rules. The Supreme Court said clearly in Piper that the adequacy of alternative fora should not turn on differences in substantive law. Piper, 454 U.S. at 256, 102 S.Ct. at 266. The rule should be the same with respect to procedural differences. While discovery rules in British Columbia may impede Lacey, such that he "may not be able to rely on a strict liability theory, and ... [his] potential damages award may be smaller, there is no danger that [Lacey] ... will be deprived any remedy or treated unfairly" in British Columbia. See id
 
 
 [5]
 The district court misapprehended that defendants control all evidence of exhaust system defects that Lacey needs to make out his products liability claim. See maj. op., 183-184. This is not to say, however, that defendants cannot identify the sources and nature of the products liability proofs Lacey seeks
 
 
 [6]
 Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)
 
 
 [7]
 Of the eleven Gulf Oil factors, the district court found these weighed in favor of dismissal: (1) relative ease of access to sources of proof; (2) relative advantages and obstacles to a fair trial; (3) imposition of jury duty on people of a community (Pennsylvania) which has no relation to the litigation; (4) British Columbia's interest in having localized controversies decided in British Columbia; (5) difficulties associated with application of foreign law; and (6) other burdens imposed on forum
 The district court decided the following factors were "neutral" for purposes of balancing: (7) availability of compulsory process; (8) cost of obtaining attendance of willing witnesses; (9) possibility of a view; and (10) enforceability of judgment. The court assigned "no weight" to (11) administrative difficulties arising from court congestion.
 
 
 [8]
 Compare the district court's analysis of the "other burdens" factor, which is not disputed on appeal. Under this factor, the district court concluded that
 the presence in British Columbia of suits by five other plaintiffs arising from the same facts and theories of liability enhances British Columbia's ability to deal with this litigation as a whole in an efficient and equitable fashion.
 
 
 [736]
 F.Supp. at 669 (emphasis added). The relative advantages and obstacles to a fair trial factor does not consider the pendency in British Columbia of these related suits; rather, it weighs the importance of being able to join Lacey's action and defendants' third-party actions for contribution and indemnity
 
 
 [9]
 The district court said this factor weighs in favor of dismissal because (1) "British Columbia has a decidedly greater interest in this litigation and consequently, Canadian law will apply.... [A]pplication of Canadian law [in a Pennsylvania proceeding] will be difficult", 736 F.Supp. at 668; and (2) even if Lacey were to proceed in Pennsylvania and Pennsylvania law applied to his claim, "the stage is set for an array of possible problems concerning the application of differing law in the same controversy" because defendants will "file a separate suit in British Columbia for contribution and indemnity under Canadian law". Id. at 669
 
 
 [10]
 See above at 193
 
 
 [11]
 This analysis does not reduce Piper balancing to an arithmetic exercise. The mathematic flavor of my count of Gulf Oil factors is meant to clarify the logic of the district court's decision to dismiss, and to highlight that the majority substitutes its own balancing judgment for that of the district court. I do not recommend that the district court's Piper balancing was, or should on remand be, dictated by numerical formulae. Nevertheless, I do not believe it is appropriate to make the district court's right to rebalance on remand contingent on reanalysis of a single factor. The majority opinion does exactly that
 
 
 [12]
 Of course, in such a rebalancing, the district court would have to take into account the majority's view that the application of foreign law factor is neutral, and that British Columbia's ability to collect all potentially culpable defendants in a single proceeding is not as important as Lacey's access to "essential" proofs
 
 
 [13]
 The majority says, maj. op. at 183, n. 10:
 [W]e do not intimate that the possibility of a comprehensive proceeding in British Columbia [in which Lacey could prosecute his products liability action and defendants could institute actions for contribution and indemnity against several third-party defendants] lacks independent significance. Rather, we simply point out that a dismissal on forum non conveniens grounds would not really collect all related actions and potentially culpable parties in one forum if Lacey's ability to prosecute his cause of action would be emasculated in the process.
 
 
 [14]
 True, the Supreme Court did not hold "that the possibility of an unfavorable change in law should never be a relevant consideration in a forum non conveniens inquiry." 454 U.S. at 254, 102 S.Ct. at 265 (emphasis in original). However, its did say that if any change in law is to be cognizable in forum non conveniens analysis, the change must go to the fundamental adequacy of the remedy provided by the alternative forum. Id., 254-55, 102 S.Ct. at 265-66. The Court implied this issue is to be resolved as a threshold matter, when the district court initially decides whether defendant's alternative forum is an "adequate" one. Id. at 254, n. 22, 102 S.Ct. at 265, n. 22
 The change in discovery laws posed by this case does not make British Columbia an "inadequate" forum. The change of law at stake here is procedural rather than remedial, and the majority has already "endorsed" the district court's determination that British Columbia is a "suitable alternative forum", because its adequacy "was not seriously contested" by Lacey. See maj. op. at 180, n. 7.
 
 
 [15]
 The other three factors weighing in favor of dismissal are those uncontested by Lacey on appeal