**Sandra CARRICK, Individually and as administratrix of the Estate of Michael J. Carrick, deceased**

v.

**ZURICH–AMERICAN INSURANCE GROUP, Appellant**

No. 93–3311.

United States Court of Appeals, Third Circuit.

Argued Dec. 17, 1993.

Decided Jan. 25, 1994.

Victor J. Kinnunen (argued), Fuller, Kinnunen, Petruso, Gamble, Fabian & Hall, Titusville, PA, for appellee.

Robert J. Marino (argued), Dickie, McCamey & Chilcote, Pittsburgh, PA, for appellant.

Before: GREENBERG and ROTH, Circuit Judges, and FULLAM, District Judge.*

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

### I. BACKGROUND

This case is before this court on appeal from an order entered on May 24, 1993, in this declaratory judgment diversity action. We will affirm.

The appellee Sandra Carrick filed this action, individually, and as executrix of the Estate of Michael J. Carrick, in the Court of Common Pleas of Crawford County, Pennsylvania, against the defendant-appellant Zurich–American Insurance Group, an Illinois corporation. Zurich removed the case to the district court pursuant to 28 U.S.C. § 1441. In her complaint, Carrick sought a declaratory judgment "adjudicating the respective rights and duties of [Carrick] and [Zurich] as to the subrogation claim of [Zurich] as against any settlement and/or verdict obtained against one or more third party defendants in ... wrongful death and/or survival actions pending in the State of Vermont."

The facts underlying this controversy are not in dispute. Carrick had been married to Michael J. Carrick until his death on January 16, 1991. Carrick and her husband were Pennsylvania citizens and residents when he died, and she continues to be a Pennsylvania citizen and resident. Siemens Stromberg–Carlson Corporation employed Michael J. Carrick until his death, and he did most of his work for Siemens in Pennsylvania. On January 16, 1991, while working for Siemens,

* Hon. John P. Fullam, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Michael J. Carrick was killed in a motor vehicle accident in Vermont.

Carrick thereafter filed a workers' compensation claim in Pennsylvania against Siemens. A referee awarded Carrick workers' compensation benefits pursuant to Pennsylvania law, and neither Siemens nor Zurich, its workers' compensation insurance carrier, appealed from the award. Accordingly, Zurich has made workers' compensation payments to Carrick. Carrick also filed actions in Vermont against various defendants, alleging they were responsible for her husband's injury and death, but the defendants in the Vermont cases are not parties to this declaratory judgment case. While Zurich seeks to subrogate to the potential recoveries in those actions, Carrick contends that Zurich is not entitled to share in any recovery she may make in the Vermont actions.[1]

The dispute between Zurich and Carrick has generated a choice of law question because of the differing treatment of subrogation claims derived from motor vehicle accidents for workers' compensation payments in Pennsylvania and Vermont at the time of Michael J. Carrick's death. Under 75 Pa. Cons.Stat.Ann. § 1720 (Supp.1993), a workers' compensation insurance carrier had no right of subrogation or reimbursement for workers' compensation benefits from a claimant's tort recovery in an action arising out of the maintenance or use of a motor vehicle. On the other hand, under Vt.Stat.Ann. tit. 21 § 624 (1992), subrogation was and continues to be authorized in the same situation. Not surprisingly, Carrick points to Pennsylvania law to bar Zurich's subrogation claim but Zurich contends that it should be allowed to assert a subrogation claim under Vermont law. The district court accepted Carrick's argument and thus entered a summary judgment declaring that Pennsylvania law governs the subrogation claim. Zurich appeals

and we have jurisdiction under 28 U.S.C. § 1291.

## II. DISCUSSION

In a diversity action, "the choice of law rules of the forum state [determines] which state's law will be applied." *Shuder v. McDonald's Corp.*, 859 F.2d 266, 269 (3d Cir.1988) (citing *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941)). Accordingly, we apply Pennsylvania's choice of law rules. Our scope of review is plenary, as the district court decided this matter on a motion for summary judgment and we decide this case through the application of legal precepts.

The Pennsylvania Supreme Court's leading choice of law decision is *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964). *See Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir.1991). In *Griffith* the court abandoned the traditional *lex loci delicti* conflicts rule for "a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." *Griffith*, 203 A.2d at 805. In commenting on the development of Pennsylvania's flexible rule, we have indicated:

> this new conflicts methodology has evolved into a hybrid approach that 'combines the approaches of both Restatement II (contacts establishing significant relationships) and "interest analysis" (qualitative appraisal of the relevant States' policies with respect to the controversy).'

*Lacey*, 932 F.2d at 187 (quoting *Melville v. American Home Assurance Co.*, 584 F.2d 1306, 1311 (3d Cir.1978)).

The Pennsylvania Supreme Court has not rendered any opinion after *Lacey* impugning the validity of *Lacey's* exposition of Pennsylvania's flexible choice of law rule.[2] Moreover, the Pennsylvania Supreme Court has summarized succinctly its major choice of law rules as follows:

> *McSwain v. McSwain*, 420 Pa. 86, 215 A.2d 677 (1966); *Elston v. Industrial Lift Truck Co.*, 420 Pa. 97, 216 A.2d 318 (1966); *Kuchinic v. McCrory*, 422 Pa. 620, 222 A.2d 897 (1966); *Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854 (1970); *Myers v. Commercial Union Assurance Cos.*, 506 Pa. 492, 485 A.2d 1113 (1984).

---

1. We understand that both Vermont cases still are pending and thus there has been no recovery in them. Nevertheless, the dispute before us is justiciable. *See ACandS, Inc. v. Aetna Casualty and Sur. Co.*, 666 F.2d 819 (3d Cir.1981).

2. The Pennsylvania Supreme Court's major choice of law decisions after *Griffith* are:

(1) This Court in *Griffith v. United Air Lines, Inc.*, held that in resolving a potential conflict between the application of state laws we must consider the policies and interest underlying the particular issue before the court. *Id.* at 21, 203 A.2d at 805.

(2) As further explained in *McSwain v. McSwain*, 420 Pa. 86, 215 A.2d 677 (1966), we must analyze ... the extent to which one state rather than another has demonstrated, by reason of its policies and their connection and relevance to the matter in dispute, a priority of interest in the application of its rule of law.

(3) Furthermore, in evaluating the interests of one jurisdiction over another, we must view the factors qualitatively as opposed to quantitatively, *Cipolla v. Shaposko*, 439 Pa. 563, 267 A.2d 854 (1970).

*Myers v. Commercial Union Assurance Companies*, 506 Pa. 492, 485 A.2d 1113, 1115 (1984). These rules comport with *Lacey*.

■ The district court indicated that "Pennsylvania courts have consistently held that the state where the worker's compensation policy is regulated is the state with the most significant contacts regarding workers' compensation subrogation." It cited *Allstate Ins. Co. v. McFadden*, 407 Pa.Super. 537, 595 A.2d 1277, 1279 (1991), *alloc. denied*, 529 Pa. 644, 602 A.2d 855 (Sup.Ct.1992), and *Van Den Heuval v. Wallace*, 382 Pa.Super. 242, 555 A.2d 162 (1989), for this proposition and we agree with its analysis.

Allstate involved a Pennsylvania resident, acting in the course of his employment for his Pennsylvania employer, who was injured in a motor vehicle accident in New Jersey. *Allstate*, 595 A.2d at 1277. The resident received benefits under the Pennsylvania Workers' Compensation Act, and he settled a tort claim against the other driver.

His workers' compensation insurer and his employer itself brought an action in Pennsylvania seeking reimbursement of the workers' compensation benefits, claiming that New Jersey law, which permits subrogation, should govern the issue. The court held that

"Pennsylvania is the state with the most significant interest in determining the right of an employer to subrogation where it has made payments to any injured employee." *Id.* at 1279. Thus, pursuant to 75 Pa.Cons. Stat.Ann. § 1720, subrogation was not allowed. While the court recognized that New Jersey had an interest in vehicular accidents within its boundaries, it found that the issue before the court was "not who was responsible for the accident but whether the appellants have a right to subrogation of the monies paid to appellee under the [Pennsylvania] Workmen's Compensation Act when he has made settlement with the tortfeasor." *Id.* at 1279.

The *Allstate* court cited *Van Den Heuval v. Wallace*, 555 A.2d 162, in which the court found that because the workers' compensation benefits were made pursuant to Delaware law, a third-party damage action in Pennsylvania stemming from an accident in Pennsylvania should be governed by Delaware law which allowed subrogation. 555 A.2d at 163–64. Thus, notwithstanding section 1720, the workers' compensation carrier was permitted to intervene in the Pennsylvania action. We therefore are satisfied that a Pennsylvania court would apply the law of the state which governs the workers' compensation benefits to a worker's compensation insurance carrier's subrogation claim to recoveries from claims arising from motor vehicle accidents in other states.[3] While *Allstate* and *Van Den Heuval* are decisions of the Superior Court, we believe that the Pennsylvania Supreme Court would follow them, as they are consistent with the choice of law principles as they have developed under *Griffith*, and thus so do we. *See Dillinger v. Caterpillar, Inc.*, 959 F.2d 430, 434 n. 11 (3d Cir.1992); *Nationwide Mut. Ins. Co. v. Hampton*, 935 F.2d 578, 580 (3d Cir.1991).

But Zurich makes an argument not addressed in *Allstate* or *Van Den Heuval*. It contends that if Pennsylvania law bars its subrogation claim, then we should find that 75 Pa.Cons.Stat.Ann. § 1722 (Supp.1993) should apply in the Vermont cases. At the

---

3. Zurich correctly points out that the workers' compensation referee indicated that Carrick could have recovered compensation benefits under Vermont law. While it may be that if she

had done so Zurich could have subrogated, the point is immaterial. There is nothing unusual in a party with a choice of remedies pursuing her most favorable option.

time of Michael J. Carrick's death, section 1722 complemented section 1720 as section 1722 provided that in "any action for damages ... arising out of the maintenance or use of a motor vehicle, a person who is eligible to receive [workers' compensation] benefits ... shall be precluded from recovering the amount of [workers' compensation] benefits paid or payable...." Thus, the sections together precluded the injured worker from receiving a double recovery arising from a work-related motor vehicle accident. Zurich points out that under Vt.Stat.Ann. tit. 21, § 624 (1992), an injured worker who receives compensation payments may pursue a third-party recovery without limiting her claim for damages by reason of having received compensation payments. Zurich then observes that if Carrick is permitted to rely on Vermont law in its third-party actions, she may receive a double recovery.[4]

■ The short answer to Zurich's contention is that it will not be prejudiced if Carrick receives a full recovery in Vermont. Indeed, at oral argument before us Zurich acknowledged that if it was denied subrogation under section 1720, it made no monetary difference to it whether or not Carrick could make a full recovery in Vermont. Thus, inasmuch as we are satisfied that without regard for section 1722, section 1720 bars Zurich's claim, we will not consider the applicability of section 1722.[5] We will not issue a declaratory judgment on a point in which the entity seeking the declaration has no cognizable interest.

Zurich relies heavily on *Davish v. Gidley,* 417 Pa.Super. 145, 611 A.2d 1307 (1992), a case which, though lending some support to its position, at bottom is distinguishable. In *Davish* a Pennsylvania resident employed by a New Jersey corporation was injured in a motor vehicle accident in Pennsylvania. The employee recovered workers' compensation benefits under New Jersey law, and instituted a third-party action to recover damages for his injuries in Pennsylvania. The work-

ers' compensation carrier sought to intervene in the Pennsylvania action to assert subrogation rights which were allowed under New Jersey law. The court found that New Jersey had a more significant interest in determining the right to subrogation than Pennsylvania, as the carrier had made workers' compensation payments pursuant to New Jersey law. Accordingly, notwithstanding section 1720 the court permitted the intervention. The court then held that the employee would not be limited by section 1722 in its third-party recovery, as the employee should be permitted to seek recovery of the expenses to which the carrier would be subrogated.

Significantly for Zurich's purposes, the court indicated that "the purpose of subrogation is to preclude a double recovery by the claimant." 611 A.2d at 1310. Obviously, in *Davish* elimination of the bar of section 1722 could not have led to the employee's making a double recovery. Nevertheless, *Davish* is distinguishable because there, unlike in this case, the Pennsylvania court had all aspects of the tort case before it and the court simply acknowledged that Pennsylvania law in itself could not allow a double recovery. Here, we are convinced that even if we believed that Vermont will allow Carrick to prove all of her damages, without regard for her workers' compensation recovery, we should nevertheless apply section 1720 and bar subrogation. We reach this conclusion because we believe that *Allstate, Van Den Heuval* and *Davish* correctly demonstrate that under Pennsylvania law if the right to subrogation and the scope of the damages in the third-party action are to be harmonized, the former will be paramount.[6] In short, we conclude that if Carrick is to be denied a double recovery, it must be in the tort actions.

---

4. The term "double recovery" is used in this opinion as a convenient shorthand expression of the concept that the tortfeasors' liability to Carrick, if any, will not be reduced by payments from a collateral source, and in addition that Zurich as a collateral source payor will not be able to recover from Carrick any portion of her recovery from the tortfeasors which duplicates Zurich's payments.

5. In view of this conclusion, we need not consider the effect of the absence from this case of the defendants in the Vermont actions. In this regard we point out that Carrick, who does have an interest in the applicability of section 1722, has not sought a declaratory judgment as to its applicability in the Vermont actions.

6. Indeed, there may have been a double recovery in *Allstate,* though we cannot be sure of that from the facts in the opinion.

We do, however, point out that we are not certain that Vermont will allow Carrick to seek a double recovery.[7] Thus, in *St. Paul Fire & Marine Ins. Co. v. Surdam*, 156 Vt. 585, 595 A.2d 264 (1991), the Supreme Court of Vermont would not allow a workers' compensation carrier paying compensation under Vermont law to exercise the subrogation rights otherwise allowed under Vt.Stat.Ann. tit. 21, § 624, inasmuch as the worker was barred from recovering economic losses from the other worker by the law of New York, the state in which she was injured. The implication of *Surdam* is that Vermont law requires that an employee's rights to a full third-party recovery and a carrier's right to subrogation be kept in symmetry. If so, then perhaps if the defendants in the Vermont actions contend that section 1722 should limit Carrick's damages in Vermont they will be successful. We do not, however, predicate our result on an anticipation of what damages law the Vermont courts will apply in the tort cases pending there. Rather, we assume that Carrick may make a double recovery, *i.e.*, she may receive and retain the workers' compensation benefits without subrogation and make and retain a full recovery in Vermont for all losses allowable under Vermont law even if they partially duplicate her compensation recovery. If this happens, it will simply be because in the circumstances of this case Vermont law will permit a double recovery.

■ Zurich makes an additional argument. It points out that sections 1720 and 1722 were repealed during the pendency of this appeal insofar as they relate to workers' compensation benefits under the Pennsylvania Workers' Compensation Act. 1993 Pa.Legis.Serv.Act 1993–44, § 25(b). Thus, it contends that this action should be governed by the provisions of the Pennsylvania Workers' Compensation Act which allow subrogation to recoveries in third-party claims when the carrier has paid workers' compensation benefits. Pa.Stat.Ann. tit. 77, § 671 (1992). While the Pennsylvania Legislature did not in express terms make the repealer retroactive, Zurich contends, citing *Universal Cyclops Steel Corp. v. Workmen's Compensation Appeal Bd.*, 9 Pa.Cmwlth. 176, 305 A.2d 757, 761 (1973), that the repealing statute is procedural and thus should be applied to this pending action. We reject this argument. In our view, a statute which allocates the proceeds of a recovery in a tort action is substantive rather than procedural and thus in Pennsylvania it will not be applied retroactively. *Id.*[8]

### III. CONCLUSION

The order of May 24, 1993, will be affirmed.

---

**7.** Zurich contends that the district court failed to consider "the effect that its ruling will have in" the Vermont litigation. Brief at 11. While it is true that the court was not concerned with the Vermont ligation, its lack of concern was entirely appropriate, as section 1720 is applicable without regard for the Vermont litigation.

**8.** We note one further point. While section 1720 applied, and to the extent not repealed continues to apply, to "actions arising out of the maintenance or use of a motor vehicle," Zurich does not contend that either Vermont action is not within that section, even though some of the defendants in Vermont are establishments which allegedly served alcohol to the driver of the vehicle colliding with Michael J. Carrick's vehicle.