Ronald GETEK, Plaintiff,

v.

**OHIO CASUALTY INSURANCE CO., et al., Defendants.**

Civ. A. No. 93–3902.

United States District Court, E.D. Pennsylvania.

Nov. 30, 1994.

Cathyanne A. Pisciotta, Steven Blader, Szaferman, Lakind, Blumstein, Watter & Blader, Lawrenceville, NJ, for plaintiff.

Christopher H. Wright, Thomas F. Miller, Bala Cynwyd, PA, for defendants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiff is a New Jersey resident who is employed in Pennsylvania, and was injured in an automobile accident in New Jersey while in the scope of his employment. As a result of the accident, plaintiff collected workers' compensation benefits under his employer's Pennsylvania workers' compensation policy. Also as a result of the accident, plaintiff brought and later settled for $100,000 a personal injury action in New Jersey Superior Court against the driver of one of the other vehicles involved in the accident. The insurance carrier who provided coverage to plaintiff's employer under the Pennsylvania workers' compensation law now claims that it is entitled to a subrogation claim against the $100,000 settlement of the New Jersey personal injury action for the money paid to plaintiff under the workers' compensation policy. The plaintiff has filed this declaratory judgment action seeking an adjudication of his rights to the settlement proceeds. Both the defendant insurance company and the plaintiff have moved for summary judgment. For the reasons that follow, the plaintiff's motion will be **GRANTED** and the defendant's motion will be **DENIED**.

## I. *Standard for Summary Judgment*

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The Court must accept the non-movant's version of the facts as true, and resolve conflicts in the non-movant's favor. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993). The moving party bears the initial burden of pointing out the absence of genuine issues of material fact, *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986), but once it has done so, the non-moving party cannot rest on its pleadings, *see* Fed.R.Civ.P. 56(e). Rather, the non-movant must come forward with facts showing that a genuine issue exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

## II. *FACTUAL BACKGROUND*

The following facts are undisputed. At the time of the accident, plaintiff Ronald Getek ("Getek") was a New Jersey resident who was employed by Princeton Biomedical Laboratories ("Princeton Biomedical") which had its principal place of business in Levittown, Pennsylvania. Princeton Biomedical also had an office in New Jersey. Getek was based at Princeton Biomedical's Levittown office. On January 27, 1990, Getek was instructed by his employer to make a delivery to a customer in New Jersey. Getek used his own car, which was registered in New Jersey and insured in accordance with New Jersey law, to make the delivery. While making the delivery, Getek was involved in an automobile accident in Orange, New Jersey.

Following the accident, Getek sought workers' compensation benefits through defendant Ohio Casualty Insurance Company ("Ohio Casualty"), the workers' compensation carrier for Princeton Biomedical. Princeton Biomedical's policy with Ohio Casualty provided coverage in accordance with the workers' compensation laws of both Pennsylvania and New Jersey. On March 20, 1990, Getek elected to receive his benefits in accordance with the workers' compensation laws of Pennsylvania. From approximately March 20, 1990 until March 9, 1994, Ohio Casualty paid Getek $52,137.89 in wage loss benefits, and $54,492.52 in medical expense payments.

On May 3, 1990, Getek filed a complaint in the Mercer County, New Jersey Superior Court against the driver of one of the other automobiles involved in the accident, seeking damages for the personal injuries that he suffered in the accident. The defendant in the New Jersey lawsuit was also a resident of New Jersey, and his car was also registered in New Jersey. The lawsuit was ultimately settled in March, 1993, for $100,000. Ohio Casualty asserted a subrogation lien against the settlement proceeds, which have yet to be distributed to either Getek or Ohio Casualty.

## III. *DISCUSSION*

### A. *Conflict of Law Analysis: True or False Conflict*

Defendant contends that New Jersey law applies to this case. Plaintiff disagrees, arguing that Pennsylvania law applies. Before engaging in choice of law analysis, however, the Court must determine whether there is a "false conflict" between the ostensibly competing bodies of law. A false conflict exists if only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law. In such a situation, the Court must apply the law of the state whose interests would be harmed if its law were not applied. *See Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir.1991).

New Jersey law allows workers' compensation carriers to assert a statutory lien against any recovery by an injured employee against a third party tortfeasor. *See* N.J.Stat.Ann.

§ 34:15–40 (West 1994).[1] At the time in question, however, Pennsylvania, prohibited it, thus creating a conflict between the policies of the two states regarding subrogation. *See* 75 Pa.Cons.Stat.Ann. § 1720 (effective October 1, 1984) (repealed August 31, 1993).[2] Ohio Casualty argues that this apparent conflict is not what it seems because Section 1720, a part of the Pennsylvania Motor Vehicle Financial Responsibility Law (75 Pa.Cons. Stat.Ann. §§ 1701 et seq.), which admittedly bars subrogation, should be read together with Section 1722 of the same statute which prohibits an injured employee from asserting a tort claim against a third party if the employee elected to receive workers' compensation benefits. *See* 75 Pa.Cons.Stat.Ann. § 1722.[3] Read in this fashion, according to Ohio Casualty, there is no conflict since Pennsylvania, just as New Jersey, would allow an injured employee to collect either workers' compensation benefits or tort damages, but not both.

▆▆▆ The Court disagrees that Section 1720 should be read *in pari materia* with Section 1722. Two statutes are said to be *in pari materia* "[if they] pertain to the same subject—and, under settled principles of statutory construction, should therefore be construed 'as if they were one law' ". *Erlenbaugh v. United States*, 409 U.S. 239, 243, 93 S.Ct. 477, 480, 34 L.Ed.2d 446 (1972) (quoting *United States v. Freeman*, 44 U.S. 556, 564, 11 L.Ed. 724 (1845)). That two sections of the same legislative enactment relate to the same subject matter does not compel *in pari materia* construction if the two sections in question were intended to serve significantly different purposes. *Id.*, 409 U.S. at 244, 93 S.Ct. at 480. The Court finds that this is the case here. While both Section 1720 and Section 1722 are related, i.e., each defines some part of a claimant's rights under the Pennsylvania workers' compensation benefit scheme, the two sections, on their face, address different situations, and serve different functions. While Section 1720 bars a workers' compensation carrier from asserting the right to subrogation against the *claimant*, Section 1722, on the other hand, bars the claimant from collecting in a tort action against a *third party* if the claimant elected to receive workers' compensation benefits. Therefore, the Pennsylvania policy towards subrogation claims by a workers' compensation carrier is governed by Section 1720, which unambiguously prohibits it, and Section 1722, which defines the rights of a third party (not of the workers' compensation carrier) vis a vis a workers' compensation claimant, cannot be read to limit it or modify it in any way. *See Carrick v. Zurich–American*

1. Section 34:15–40 provides in pertinent part:

 \* \* \* \* \* \*

 (b) If the sum recovered by the employee or his dependents from the third person or his insurance carrier is equivalent to or greater than the liability of the employer or his insurance carrier under this statute, the employer or his insurance carrier shall be released from such liability and shall be entitled to be reimbursed, as hereinafter provided, for the medical expenses incurred and compensation payments theretofore paid to the injured employee or his dependents less employee's expenses of suit and attorney's fee as hereinafter defined. N.J.Stat.Ann. § 34:15–40 (West 1994).

2. Section 1720, which was repealed on August 31, 1993, provided that:

 In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits, benefits available under section 1711 (relating to required benefits), 1712 (relating to availability of benefits) or 1715 (relating to availability of adequate limits) or benefits paid or payable by a program, group contract or other arrangement whether primary or excess under section 1719 (relating to coordination of benefits).
 75 Pa.Cons.Stat.Ann. § 1720 (effective Oct. 1, 1984) (repealed August 31, 1993).

3. Section 1722, which was repealed on August 31, 1993, provided that:

 In any action for damages against a tortfeasor, or in any uninsured or underinsured motorist proceeding, arising out of the maintenance or use of a motor vehicle, a person who is eligible to receive benefits under the coverages set forth in this subchapter, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719 (relating to coordination of benefits) shall be precluded from recovering the amount of benefits paid or payable under this subchapter, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719.
 Pa.Cons.Stat.Ann., tit. 75, § 1722 (effective October 1, 1984) (repealed August 31, 1993).

*Ins. Group,* 14 F.3d 907, 911 (3d Cir.1994) (workers' compensation carrier has no "cognizable interest" to assert under Section 1722).[4]

Since the application of Pennsylvania law, which bars subrogation, and of New Jersey law, which permits it, would result in different outcomes, there is a "true conflict" which the Court must resolve in this case.

**B. Choice of Law Analysis: Pennsylvania Law Applies**

■ In a diversity action, "the choice of law rules of the forum state [determine] which state's law will be applied." *Shuder v. McDonald's Corp.,* 859 F.2d 266, 269 (3d Cir.1988) (citing *Klaxon v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Accordingly, the Court will apply Pennsylvania's choice of law rules.

■ In *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964), the Pennsylvania Supreme Court abandoned the traditional *lex loci delicti* conflicts rule for "a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." *Id.,* 203 A.2d at 805. In commenting on the development of the rule set forth in *Griffith,* the Third Circuit stated:

> this new conflicts methodology has evolved into a hybrid approach that 'combines the approaches of both Restatement II (contacts establishing significant relationships) and "interest analysis" (qualitative appraisal of the relevant States' policies with respect to the controversy).'

*Lacey v. Cessna Aircraft Co.,* 932 F.2d 170, 187 (3d Cir.1991) (quoting *Melville v. American Home Assur. Co.,* 584 F.2d 1306, 1311 (3d Cir.1978).

"Pennsylvania courts have consistently held that the state where the worker's compensation policy is regulated is the state with the most significant contacts regarding workers' compensation subrogation." *Carrick v. Zurich–American Ins. Group,* 14 F.3d 907,

910 (3d Cir.1994). In *Carrick,* the plaintiff's deceased husband was a Pennsylvania resident who worked for a Pennsylvania company, and was killed in a motor vehicle accident during the course of his employment in Vermont. Plaintiff, also a Pennsylvania resident, was awarded workers' compensation benefits pursuant to Pennsylvania law. Defendant Zurich–American Insurance Group made workers' compensation benefits payments to plaintiff. Plaintiff also sued various defendants in Vermont, alleging that they were responsible for her husband's death. Zurich–American sought to subrogate to plaintiff's potential recoveries in the Vermont action. *Id.* at 908–09. In determining whether to apply Vermont law or Pennsylvania law, the Third Circuit found that "a Pennsylvania court would apply the law of the state which governs the workers' compensation benefits to a worker's compensation insurance carrier's subrogation claim to recoveries from claims arising from motor vehicle accidents in other states." *Id.* at 910.

In reaching its decision, the Third Circuit relied on the Pennsylvania Superior Court's decision in *Allstate Ins. Co. v. McFadden,* 407 Pa.Super. 537, 595 A.2d 1277, 1279 (1991). In *McFadden,* a Pennsylvania resident, acting in the course of his employment for a Pennsylvania employer, was injured in a motor vehicle accident in New Jersey. In determining that Pennsylvania rather than New Jersey law applied, the Court stated:

> We determine the state that had the most significant relationship on the basis of the question that we must resolve, and not on the location of the accident or the residence of the tortfeasor. Our inquiry is not who was responsible for the accident but whether the [insurance company and employer] have a right to subrogation of the monies paid to [the plaintiff] under the Workmen's Compensation Act when he has made settlement with the tortfeasor. The motor vehicle accident in New Jersey merely triggered [plaintiff's] rights to compensation under the Pennsylvania Workmen's Compensation Act, but it is not the

---

**4.** The record is devoid of any evidence that the defendant in the New Jersey tort action asserted Section 1722 as a defense.

overriding consideration before us. Pennsylvania is the state with the most significant interest in determining the right of an employer to subrogation where it has made payments to an injured employee. We therefore conclude that the law of Pennsylvania is applicable.

*Allstate Ins. Co. v. McFadden,* 595 A.2d at 1279 (emphasis added).

Ohio Casualty attempts to distinguish *Carrick,* and *Allstate,* by arguing that the determinative factor in those decisions was the Pennsylvania residency of the injured employee. A similar argument was rejected in *Davish v. Gidley,* 417 Pa.Super. 145, 611 A.2d 1307, 1309–10 (1992). There, the plaintiff was a resident of Pennsylvania, employed by a New Jersey company, and involved in an accident in Pennsylvania. The Court held that New Jersey law applied because the plaintiff elected to receive his workers' compensation benefits from New Jersey. In explaining its decision, the Court stated that "neither [plaintiff's] residency in Pennsylvania nor the accident's situs in this Commonwealth is an overriding consideration. The fact that the accident occurred in Pennsylvania merely triggered [plaintiff's] right to workers' compensation under either the New Jersey Workers' Compensation Law or the Pennsylvania Workmen's Compensation Law." *Id.*

Ohio Casualty also argues that since the litigation has more contacts with New Jersey than Pennsylvania, New Jersey law should apply. The Court disagrees. "The law does not require us to apply the law of the state whose contacts are most numerous, but rather demands a sensitivity to the relative importance of each of the several contacts to the substantive policy of workmen's compensation." *Davish v. Gidley,* 611 A.2d at 1310 (quoting *Lewis v. Chemetron Corp.,* 448 F.Supp. 211, 213 (W.D.Pa.1978).

Based upon an analysis of "the policies and interests underlying the particular issue before the court," *see Griffith v. United Air Lines, Inc.,* 203 A.2d at 805 (1964), the Court concludes that the most important question in this litigation is whether there is a right to subrogation, and that Pennsylvania, as the state where payments were made to the injured employee, has the most significant interest in the resolution of that question. *Allstate Ins. Co. v. McFadden,* 595 A.2d at 1275. Since Pennsylvania law applies, and it is clear that Section 1720 prohibits subrogation, Ohio Casualty's claim to subrogation fails.

### C. Retroactive Effect of the Repeal of Section 1720

▋ Ohio Casualty argues that since Section 1720 was repealed on August 31, 1993, *see* 1993 Pa.Legis.Serv.Act 1993–94, § 25(b), eliminating the bar against subrogation in automobile accident cases, the present litigation should be governed by Section 671 of the Pennsylvania Workers' Compensation Act which allows subrogation to recoveries in third-party claims when the carrier has paid workers' compensation benefits.[5] This argument has been rejected by both the Pennsylvania Commonwealth Court; *see Byard F. Brogan, Inc. v. Workmen's Compensation Appeal Board,* 161 Pa.Cmwlth. 453, 637 A.2d 689, 694 (1994), and the Third Circuit, *see Carrick v. Zurich–American Ins. Group,* 14 F.3d 907, 912 (3d Cir.1994). In *Byard F. Brogan,* the Court set forth the general rule regarding the retroactive application of statutes: "[l]egislation which affects rights will not be construed to be retroactive unless it is declared so in the act. But where it concerns merely a matter of procedure, it is applied, as of course, to litigation existing at the time of passage." *Byard F. Brogan, Inc.,* 637 A.2d at 694 (quoting *Kuca v. Lehigh Valley Coal Co.,* 268 Pa. 163, 110 A. 731, 732 (1920); *see also* 1 Pa.Cons.Stat.Ann. § 1926 (Purdon Supp.1990) ("No statute shall [be]

---

5. Section 671 provides in pertinent part that: Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employee, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article [footnote 1: 77 P.S. § 411 et seq.] by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employee [sic], his personal representative, his estate or his dependents ...

*See* Pa.Stat.Ann., tit. 77, § 671 (1972).

construed to be retroactive unless clearly and manifestly so intended by the General Assembly.").

 Both the Pennsylvania Commonwealth Court in *Byard F. Brogan,* and the Third Circuit in *Carrick* found that since Section 1720 allocates the proceeds of a recovery in a tort action, it is substantive rather than procedural, and therefore that the repealing statute could not be applied retroactively.[6]

## IV. CONCLUSION

In the present case, Getek elected to receive his workers' compensation benefits under the laws of the Commonwealth of Pennsylvania, and under the Pennsylvania choice of law analysis Pennsylvania has a more significant interest in this action than New Jersey. Because Pennsylvania law bars Ohio Casualty from asserting a subrogation claim against the settlement proceeds of Getek's personal injury action, the Court shall deny Ohio Casualty's summary judgment motion and will grant Getek's summary judgment motion.

---

**6.** Ohio Casualty's last argument is that it should be allowed a subrogation claim for all workers' compensation benefits that it paid to Getek since August 31, 1993, when Section 1720 was repealed. This argument seems on its face to call for a properly prospective application of the statute that repealed Section 1720. However, when it is considered that any such subrogation claim by Ohio Casualty would be made against the proceeds of the $100,000 settlement that Getek negotiated in March, 1993, before Section 1720 was repealed, it becomes apparent that applying the repealing statute in such a way would have a retroactive effect, i.e., it would deprive Getek of a substantive right. As noted *supra,* under Pennsylvania law, a statute that affects substantive rights will not be applied retroactively. *See Carrick,* 14 F.3d at 912; *Byard F. Brogan, Inc.,* 637 A.2d at 694; *see also, Landgraf v. USI Film Products,* —— U.S. ——, ——, 114 S.Ct. 1483, 1504, 128 L.Ed.2d 229 (1994) (traditional presumption against applying statutes affecting substantive rights, liabilities or duties to conduct occurring before their enactment). The Court therefore rejects this argument.